No. 81,047

MARGARET ECKMAN MCTAGGART, a minor, by and through her natural mother and next friend, DEBORAH C. MCTAGGART, *Appellant,* v. LIBERTY MUTUAL INSURANCE, *Appellee,* and TRANSAM TRUCKING, INC., *Defendant.*

(983 P.2d 853)

Opinion filed July 9, 1999.

*James L. Crabtree*, of Crabtree Law Offices, P.A., of Lenexa, argued the cause, and *James M. Crabtree*, of the same firm, was with him on the briefs for appellant.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *David Curotto*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Margaret Eckman McTaggart appeals the trial court's grant of summary judgment in favor of Liberty Mutual Insurance Co. (Liberty Mutual) which denied McTaggart's claim for underinsured motorist coverage for a motor vehicle accident. The facts are not disputed.

McTaggart, while a passenger in a tractor-trailer being driven by her father in the course of his employment with TransAm Trucking, Inc., was severely injured in a motor vehicle accident involving an alleged negligent third party, Sonny Hill, acting in the course of his employment with Beaty Equipment, Inc.

It has been stipulated that McTaggart's damages totalled $275,000. Hill and Beaty had $75,000 in liability insurance coverage and settled with McTaggart by the payment of this amount.

McTaggart sued Liberty Mutual seeking underinsured motorist coverage under TransAm's policy in the amount of $200,000.

TransAm carried insurance provided by Liberty Mutual with $1,000,000 liability limits but with limits for underinsured coverage of $50,000. Additionally, TransAm had signed a document provided by Liberty Mutual entitled KANSAS UNINSURED MOTORISTS INSURANCE EXCESS LIMITS REJECTION (Acknowledgment of Coverage Rejection). Since the $75,000 recovered exceeded the $50,000 underinsured coverage, no additional amount would be payable by Liberty Mutual if TransAm had, pursuant to K.S.A. 40-284(c), properly rejected uninsured coverage in excess of the required amount. If, however, a proper rejection of

underinsured coverage had not been made, Liberty Mutual would owe McTaggart $200,000.

The trial court first denied Liberty Mutual's summary judgment motion, finding the rejection form used by Liberty Mutual did not effectively reject uninsured/underinsured motorist coverage. It relied principally on *Larson v. Bath*, 15 Kan. App. 2d 42, 801 P.2d 1331 (1990), *rev. denied* 248 Kan. 996 (1991).

The trial court subsequently considered a second summary judgment motion, which referred to Kansas Insurance Department Bulletin 1981-20 dated September 16, 1981, as well as *Ridgway v. Shelter Ins. Co.*, 22 Kan. App. 2d 218, 913 P.2d 1231, *rev. denied* 260 Kan. 995 (1996), a case which was decided after the trial court's earlier memorandum opinion. While *Ridgway* was not considered controlling, the trial court found the Insurance Department's Bulletin persuasive because it interpreted K.S.A. 40-284 and provided a sample written rejection form, which the agency believed would comply with the rejection requirements of K.S.A. 40-284(c).

The trial court held that because the Insurance Department was a specialized agency charged with enforcement of Kansas insurance laws, the doctrine of operative construction applied and the Insurance Department's interpretation was entitled to significant deference. The form prepared by Liberty Mutual was substantially the same as the form recommended by the department. The Liberty Mutual form had been submitted to, and approved by, the Commissioner of Insurance in February 1982 and was deemed to be a proper rejection. The trial court concluded the language should be construed to effectively constitute a rejection of the larger amount of uninsured/underinsured coverage.

Judgment was granted in favor of Liberty Mutual, from which McTaggart has appealed.

Before commencing our discussion of the rejection form utilized by Liberty Mutual, we refer to K.S.A. 40-284, where the requirements as to uninsured and underinsured motorist coverage and rejection of the same are set forth. It provides in pertinent part:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally

garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part of or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization. . . .

"(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

"(c) The insured named in the policy shall have the right to reject, in writing, the uninsured motorist coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40-3107 and amendments thereto."

In summary, K.S.A. 40-284(a) requires that an automobile liability insurance policy include coverage for damages caused by uninsured motorists in an amount equal to the policy's liability limits for bodily injury or death. K.S.A. 40-284(b) in turn requires that any uninsured motorist coverage include an underinsured motorist provision. The underinsured motorist provision must have coverage limits equal to the limits of liability provided by the uninsured motorist coverage to allow the insured to recover damages from the insurer "to the extent such coverage exceeds the limits of the bodily injury coverage carried by the [underinsured] owner or operator of the other motor vehicle." K.S.A. 40-284(b).

Under K.S.A. 40-284(c), however, the insured named in the policy has the right to reject, in writing, the coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40-3107. K.S.A. 40-3107(e) provides for a limit of not less than $25,000 for bodily injury to, or death of, one person in any one accident and for a limit of not less than $50,000 for bodily injury to, or death of, two or more persons in any one accident.

The record before us is based on stipulated facts and documentary evidence and our standard of review is de novo. See *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997). Additionally, the interpretation of a statute is a question of law of which our review is unlimited, *National Council on Compensation Ins. v. Todd*, 258 Kan. 535, Syl. ¶ 2, 905 P.2d 114 (1995), and the construction of a written agreement is a question of law over which we have plenary review. See *In re Living Trust of Huxtable*, 243 Kan. 531, 533, 757 P.2d 1262 (1988).

McTaggart's first contention is that the trial court's initial legal conclusion that the Liberty Mutual rejection form was insufficient should not be nullified by the later ruling applying the doctrine of operative construction.

There is no question that a trial court retains control over its proceedings and has the power to correct errors or injustice until a final judgment is entered. See *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 720-21, 840 P.2d 1107 (1992). What McTaggart complains of is that the trial court's initial belief that the revocation was insufficient should not be changed or overruled by its later consideration of Kansas Insurance Department Bulletin 1981-20 and the application of the doctrine of operative construction.

In *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 (1991), we explained the doctrine of operative construction in this manner:

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts. [Citation omitted.]"

An example of the application of the doctrine is found in *Graves v. Armstrong Creamery Co.*, 154 Kan. 365, 370, 118 P.2d 613 (1941), where we considered a statute relating to the computation of overtime pay. In construing the statute, we reviewed certain

interpretive bulletins prepared by the agency charged with the duty of administering the statute, and we gave the agency's interpretation, by way of the bulletins, great weight. In the present case, the trial court properly applied the doctrine of operative construction. However, we would hold the higher limits of the uninsured/underinsured coverage were properly rejected even if the doctrine of operative construction had not been applied.

McTaggart's fallback position is that, while the doctrine may apply to the regulation portion of Bulletin 1981-20, it should not extend to the suggested rejection form which McTaggart claims is nondeterminative and nonfinal.

The Bulletin provides in pertinent part:

"Senate Bill No. 371 becomes effective January 1, 1982. Therefore, on this January 1, 1982 date, all insurers must provide the additional coverage required by Senate Bill No. 371 on all new, renewal and outstanding motor vehicle liability insurance policies. This means that insurers must provide their insureds with liability coverage with limits of not less than those prescribed by Section 2(e) of Senate Bill No. 371 and with uninsured motorists protection and underinsured motorists protection equal to the bodily injury liability limits of the insured's policy, unless the insured has rejected such coverage in writing, in which case coverage must be provided equal to the minimum financial responsibility limits of K.S.A. 40-3107(e).

. . . .

"A Sample Amendatory Endorsement which we believe complies with Senate Bill No. 371 is attached for your immediate reference. We suggest that your company consider utilizing the same or similar wording set forth in the proposed endorsement and tailor it to your policy, if possible, inasmuch as we are of the opinion that the endorsement could be readily accepted for approval. *The attached Endorsement has been developed with the knowledge that there may be specific points that will necessitate different language upon further study and review.*

"We have also attached a sample Uninsured Motorists Coverage Excess Limits Rejection Form, which we believe complies with Senate Bill No. 371. We recommend that your company consider utilizing the same or similar wording set forth in the attached form inasmuch as we are of the opinion that the form could be readily accepted." (Emphasis added.) *Kansas Ins. Dept. Bull.* 1981-20, pp. 3-4 (September 16, 1981).

McTaggart relies on the italicized language in the above quote and contends there is no evidence of any such "further study or review" and the rejection form, therefore, was not entitled to def-

erence. This language does not relate to the sample rejection form but rather to the sample amendatory endorsement, which is not involved in our case. McTaggart's fallback argument is also not persuasive.

When the Insurance Department issued Bulletin 1981-20 interpreting K.S.A. 40-284(c) (the rejection provision), it created a sample rejection form which it believed would comply with the rejection requirements of the statute. The agency stood by the terms of its form when it stamped the Liberty Mutual rejection form, which substantially followed its recommended form, as being "Approved and Filed, Feb. 16, 1982, Fletcher Bell, Comm. of Insurance."

When the Insurance Department form is compared with the Liberty Mutual form, it is clear they are substantially the same.

The Department's recommended sample rejection form is worded as follows:

"KANSAS UNINSURED MOTORISTS COVERAGE EXCESS
LIMITS REJECTION
"(Acknowledgment of Coverage Rejection)

"I acknowledge that I have been provided Uninsured Motorists Coverage and, in addition, I have been offered the following in accordance with the law of the State of Kansas:

"I have been given the opportunity to purchase Uninsured Motorists Coverage (including Underinsured Motorists Protection) equal to my limits of liability for bodily injury or death, and instead I select lower limits of $25,000/$50,000.

"I understand and agree that this acknowledgement of the coverage rejection shall be applicable unless I subsequently request such coverage in writing.

"MAKE OF VEHICLE _____ YEAR _____ VEHICLE I.D. #_____

"_____
        "(Date)

"_____
    "(Insured's Signature)"

Liberty Mutual's rejection form as executed in this case is worded as follows:

"KANSAS UNINSURED MOTORISTS INSURANCE EXCESS
LIMITS REJECTION
"(Acknowledgment of Coverage Rejection)

"I acknowledge that I have been provided Uninsured Motorists Insurance and, in addition, I have been offered the following in accordance with the law of the State of Kansas:

"I have been given the opportunity to purchase Uninsured Motorists Insurance (including Underinsured Motorists Protection) equal to my limits of liability of

bodily injury or death, and instead I select lower limits of $ ____/____ OR $50,000. (Note: Limits selected may not be less than $25,000/$50,000 Split Limits or $50,000 Single Limit.)

"I understand and agree that this acknowledgment of the coverage rejection shall be applicable to the vehicle(s) indicated by an 'X' below unless I subsequently request such coverage in writing.

         ___ Vehicle 1
         ___ Vehicle 2
         ___ Vehicle 3
         ___ Vehicle 4
         _X_ All vehicles

"Name of Insured <u>Transam Trucking Inc.</u>   Date <u>5/1/92</u>
"Address <u>P.O. Box 411098 Kansas City, MO 64141</u>
"By (title if other than an individual) _____
"Policy Number <u>ATI-741-001858-022</u>     (Signature) <u>Bert Hicks</u>"

The only difference between the forms is that the Liberty Mutual form allows the insured to elect the lowest single limit of $50,000 and adds a "Note" in paragraph two. Additionally, unlike the sample form, paragraph three of Liberty Mutual's form allows an insured to reject coverage and elect a lower limit for one or all of its vehicles on a single form. There are no other substantial differences.

The trial court properly applied the doctrine of operative construction and correctly held the rejection form used by Liberty Mutual and signed by the insured in this case satisfied all of the requirements of K.S.A. 40-284(c).

McTaggart next argues that, as a matter of law, the Liberty Mutual rejection form is insufficient because (1) it is a selection of lower limits, not a rejection, (2) it rejects only uninsurance but not underinsurance coverage, and (3) it violates the statute by allowing an insured to choose limits in between the minimum and maximum amounts. None of these contentions have any merit.

McTaggart's first argument is that higher limits may not be rejected at the same time lower limits are selected. The premise for this argument is that to comply with K.S.A. 40-284(c), one must first reject the coverage before one can, in a separate transaction, select different limits. Although the Bulletin states that "once there has been a rejection, an insurer may offer different options of cov-

erage between the bodily injury limits and those required by K.S.A. 40-3107(e)," we do not read into this the two-step, two-form requirement proposed by McTaggart.

We see no reason under the terms of the statute or as a matter of policy why the insured cannot be informed of the availability of coverage between the minimum and maximum amounts at the same time the insured considers and chooses rejection of the higher limits. Liberty Mutual's form clearly states the minimum limits set by law and gives the insured the opportunity to select such limits at the same time it is rejecting the higher limits. The intent of the statute is not contravened simply by Liberty Mutual's method of offering the insured coverage limits in excess of the minimum at the same time that the insured acknowledges its rejection of the higher limits.

The parties to this appeal each rely on different Court of Appeals' cases to support their arguments. McTaggart, in arguing the Liberty Mutual form is merely a selection of lower limits and not a rejection of higher limits, relies on *Larson v. Bath*, 15 Kan. App. 2d 42, 801 P.2d 1331 (1990), *rev. denied* 248 Kan. 996 (1991). Liberty Mutual relies on *Ridgway v. Shelter Ins. Co.*, 22 Kan. App. 2d 218, 913 P.2d 1231, *rev. denied* 260 Kan. 995 (1996), as authority for its proposition that the language of its rejection form is sufficient.

Both *Larson* and *Ridgway* are distinguishable from the instant case. Although *Ridgway* was decided after *Larson*, we will discuss it first.

The primary issue in *Ridgway* was whether our insurance code permits an authorized agent of the named insured to reject the coverage limits of K.S.A. 40-284. Ridgway had given his live-in girlfriend, Lewis, authority to acquire insurance on his behalf, and, in that capacity, Lewis selected insurance for him, rejected the standard uninsured/underinsured coverage, and elected a lower coverage limit.

Liberty Mutual notes that in *Ridgway*, the pertinent form signed by Lewis was titled "REDUCED LIMITS ELECTION" and that the *Ridgway* court found the rejection form was unambiguous and

held that Lewis' rejection of the higher limits on Ridgway's behalf constituted a valid rejection.

The statement in *Ridgway* that the form was unambiguous was made in response to Ridgway's alternative contention that, even if Lewis could act as his agent to purchase insurance, the rejection she signed was ineffective because she did not knowingly or intentionally reject the mandated coverages.

The court in *Ridgway* did not describe the content of the form or explain why it was unambiguous and, given the absence of any analysis of the specific language of the form, the holding in *Ridgway* does not aid our analysis in this case.

In *Larson*, 15 Kan. App. 2d 42, the plaintiff was injured in an automobile accident while driving his employer's vehicle in the course of his employment. The employer's insurance policy mentioned Form A1303, the uninsured/underinsured coverage limit rejection form, but it was not shown that such form had been signed or was ever attached to the policy.

The issue in *Larson* was: "What kind of 'writing' is required to evidence rejection of higher UM [uninsured/underinsured motorist] coverage by the named insured?" 15 Kan. App. 2d at 43. After noting the purpose of uninsured/underinsured motorist coverage "is to compensate an innocent victim who is injured by an uninsured or underinsured driver," 15 Kan. App. 2d at 43, the court concluded that a written rejection is required despite the fact evidence of the intent to reject the coverage may exist. The court held that the statutory requirement in K.S.A. 40-284(c) for rejecting the higher uninsured/underinsured coverage limits was not met because "[t]he *named insured* did not reject *in writing* the higher UM limits." 15 Kan. App. 2d at 46. *Ridgway*, 22 Kan. App. 2d 218, Syl. ¶ 1, later clarified that an agent of "the named insured," who is authorized to purchase insurance for the insured, also may be given the authority to sign a valid written rejection of uninsured/underinsured motorist coverage pursuant to K.S.A. 40-284(c).

The decision in *Larson* that the rejection was invalid was not based on the language of a rejection form but rather on the fact one was not signed or attached to the policy. In contrast to *Larson*,

we have in this case a written rejection form signed by a duly authorized agent of the named insured.

Based on our analysis we do not find either *Larson* or *Ridgway* to be persuasive authority for the ultimate result we reach in this case.

The Liberty Mutual form was executed by an authorized employee of TransAm and stated in three places that it was a rejection of the higher coverage. The form specified the maximum and minimum coverage required by law. It is clearly a valid rejection of the $1,000,000 of uninsured/underinsured coverage.

Next, McTaggart argues the main title of the rejection form only refers to uninsured motorist coverage and, therefore, the form only rejects the higher limits for *uninsured* motorist coverage and does not reject such limits for *underinsured* motorist coverage. The trial court concluded that, although the form could have been worded more clearly, its language was sufficient to serve as a rejection of both uninsured motorist coverage and underinsured motorist coverage.

The trial court is correct. Paragraph two of the Liberty Mutual rejection form clearly states: "I have been given the opportunity to purchase Uninsured Motorists Insurance (including Underinsured Motorists Protection) equal to my limits of liability . . . and instead I select lower limits of . . . ." This language is essentially the same as that used in the Department's suggested form and is based on the language of subsections (b) and (c) of K.S.A. 40-284. Subsection (b) states: "Any uninsured motorist coverage shall include an underinsured motorist provision . . ." and subsection (c) states that the insured has the right to reject "the uninsured motorist coverage required by subsections (a) [uninsured motorist] and (b) [underinsured motorist]." Thus, although, the two coverages are separate, the statute treats the underinsured motorist coverage as a subcategory of uninsured motorist coverage "include[d]" in the uninsured motorist coverage.

We hold the language used in the form is not contrary to the statute and is sufficiently clear in specifying that the higher limit for *underinsured motorist coverage*, not just uninsured motorist coverage, is being rejected.

Finally, McTaggart contends the statute only allows an insured to reject coverage which is "in excess of the limits for bodily injury or death" but does not allow an insured to "choose limits which are less than liability but in excess of the minimum." We reject this interpretation of the statute.

Statutes should be interpreted to effect legislative intent, *In re Application of Zivanovic*, 261 Kan. 191, Syl. ¶ 1, 929 P.2d 1377 (1996), and should be given a reasonable interpretation to avoid absurd or unreasonable results. *State v. Le*, 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996). Because McTaggart's interpretation would require individuals to either purchase the full amount of coverage or the minimum amount of coverage with no options in between, it would discourage the purchase of limits above the minimum by many who do not want to pay for full coverage but who would, nevertheless, like to purchase coverage above the minimum. The statute clearly allows insureds to purchase insurance at the minimum level. Having given insureds such a right, there is no reason to construe the statute to prohibit the purchase of protection in excess of the minimum. McTaggart's interpretation is contrary to the policy of the underinsured motorist statute to provide broad protection to insureds against damages sustained in accidents involving and caused by uninsured or underinsured motorists, see *Dalke v. Allstate Ins. Co.*, 23 Kan. App. 2d 742, 747, 935 P.2d 1067 (1997) (describing statute's purpose), and we decline to follow it.

McTaggart last argues that Liberty Mutual's changes to the Insurance Commissioner's form and its alleged failure to follow the Commissioner's procedure render the rejection attempt invalid. This is essentially a rehash of her previous arguments. Everything we have previously stated need not be repeated.

The Liberty Mutual form clearly states it is a rejection of uninsured/underinsured motorist coverage in three different places. It was properly executed as to the vehicle insured in this case. The statute and the Liberty Mutual rejection form were both properly construed by the trial court.

Affirmed.