(42 P.3d 1191)

No. 85,233

BICHELMEYER MEATS, *Appellant*, v. ATLANTIC INSURANCE COMPANY, MARINO & WOLF, INC., and WILLIAM LINDQUIST, SR., and JACK LINDQUIST, d/b/a WILLIAM LINDQUIST AND SONS, *Appellees*.

Opinion filed June 15, 2001.

*Shawn E. DeGraff*, of Shawnee, for the appellant.

*MaLiz Shafer*, of Blackwell, Sanders, Peper, Martin, L.L.P., of Kansas City, Missouri, for appellee Atlantic Insurance Company.

*J. Franklin Hummer*, of Davis, Unrein, Hummer, McCallister, Biggs & Head, L.L.P., of Topeka, for appellees Marino & Wolf, Inc., and William Lindquist, Sr., and Jack Lindquist, d/b/a William Lindquist and Sons.

Before LEWIS, P.J., ELLIOTT, J., and DAVID W. KENNEDY, District Judge, assigned.

LEWIS, J.: Bichelmeyer Meats is a retail establishment which was operated by John Bichelmeyer from 1954 to 1975. In 1975, John's sons, James and Joseph Bichelmeyer, took over the business and formed Bichelmeyer Meats, a corporation. In 1995, a fire destroyed their retail meat operation. The company had insurance and ultimately settled with the insurance company for around $349,000 in proceeds. The corporation, however, determined it was underinsured and that this was the fault of its insurance agent.

It filed this lawsuit against its own insurance agents and others, alleging that the agents were negligent in providing inadequate insurance coverage. The trial court granted summary judgment in favor of defendants, and plaintiff appeals.

The summary judgment motion was decided under a joint stipulation of uncontroverted facts. According to those facts, John Bichelmeyer purchased some insurance products from an agent who later sold his business to William Lindquist, Sr. John continued to do business with Lindquist and purchased public liability insurance coverage on customers' meat and workers compensation insurance. John never purchased property insurance on his building or business from Lindquist.

After James and Joseph Bichelmeyer took over the retail meat business, they did some insurance business with William Lindquist, Sr.'s son, Jack Lindquist, starting in 1992, when Jack took over his father's business. The corporation also did business with Marino & Wolf, Inc., an insurance agency, which merged with William Lindquist and Sons.

In 1975, the corporation purchased its first insurance policy from William Lindquist and Sons, providing property coverage for its building. Over the next several years, the corporation continued to purchase its property coverage insurance from William Lindquist, Sr. Lindquist would come to the corporation's place of business approximately two times a year. On one occasion, he would bring the policy along for renewal, and on the other he would purchase a ham for Christmas. The record indicates that at no time was William asked or told by Bichelmeyer Meats to appraise the property for insurance purposes. James Bichelmeyer indicated he would tell William he needed insurance, and "Bill would come with an insurance policy saying this is what he thought we needed." James indicated he trusted William's judgment and that he expected that William would determine the value of the property every time he sold the insurance.

In 1993, James asked the insurance agency to increase the limits on his insurance policy by $50,000 to cover customers' goods. He also requested an increase in the contents coverage on personal property because he had read an article or two in trade magazines

about reviewing your insurance policy coverage. In addition, he provided Lindquist with a specific amount of insurance he wanted along with a quote of $5,700 that he had obtained through another insurance company. James specifically requested the Linquists to provide the corporation with a similar policy for a lesser premium than $5,700. The Linquists acceded to this request, obtained a policy with the specific coverage and limits requested, and sold it to Bichelmeyer Meats at an acceptable premium. When that policy expired, Bichelmeyer renewed the policy without any changes in coverage. It was this renewal policy which was in effect at the time of the fire.

Bichelmeyer Meats contends it was underinsured at the time of the fire and that the insurance agents had a duty to provide adequate insurance coverage for the corporation.

There were two different trial judges involved in this action. At the beginning, Judge Carlos Murguia presided, and he denied a motion for summary judgment filed by the defendants. Soon thereafter, he was appointed to a federal judgeship, and a new trial judge took over.

The new trial judge was Judge R. Wayne Lampson. After Judge Lampson was assigned the case, Bichelmeyer Meats and Atlantic Insurance Company (Atlantic) entered into a joint stipulation of uncontroverted facts. Atlantic then filed a motion for summary judgment based on those facts. Marino & Wolf and the Lindquists also filed a second motion for summary judgment at the same time.

Judge Lampson held a hearing on the motions and granted summary judgment to the defendants. The trial court found that the defendants had no duty to provide adequate insurance without a specific request to do so.

This appeal followed.

Our standard of review in a case of this nature is well known:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for

summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

The plaintiff first argues that the "law of the case" doctrine requires that we reverse Judge Lampson's decision to grant summary judgment. We do not agree.

The law of the case doctrine is generally described in 5 Am. Jur. 2d, Appellate Review § 605:

"The doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so. This rule of practice promotes the finality and efficiency of the judicial process. The law of the case is applied to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts."

A court retains an inherent power to review its own proceedings and to correct errors and to prevent injustice until a final judgment is entered even if the same issue is presented to a different judge of the same court in the same case. *City of Wichita v. Rice*, 20 Kan. App. 2d 370, 376, 889 P.2d 789 (1995). "Although factual issues may be particularly unsuitable for reconsideration, legal issues are more suitable." 20 Kan. App. 2d at 376.

The law of the case doctrine does not apply under the circumstances shown. In *McTaggart v. Liberty Mutual Insurance Co.*, 267 Kan. 641, 645, 983 P.2d 853 (1999), our Supreme Court affirmed the decision by a trial court to grant a second summary judgment motion after a previous motion had been denied. On appeal, it was argued that the previous ruling should not have been nullified by the second ruling. The Supreme Court disagreed and stated: "There is no question that a trial court retains control over its proceedings and has the power to correct errors or injustice until a final judgment is entered." 267 Kan. at 645.

In this case, no final judgment was entered on the case at the time the first motion for summary judgment was denied. Under those circumstances, there is no question that Judge Lampson had the authority to grant the second motion for summary judgment. The purpose of summary judgment motions is to encourage judicial economy and to prevent unnecessary litigation. To apply the law of the case doctrine under the facts shown would be counter to that concept.

We hold the trial court did not err in granting the second motion for summary judgment even though a similar motion had earlier been denied by a previous trial judge.

Plaintiff next argues that Marino & Wolf and the Lindquists were insurance brokers and agents of Bichelmeyer Meats and that they were impressed with fiduciary duties which were violated. The existence or nonexistence of an agency relationship is a question of law for the court to decide. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446, 827 P.2d 24 (1992). The existence of a duty is a question of law and, as an appellate court, we have unlimited review on questions of law. *Kennedy v. Kansas Dept. of SRS*, 26 Kan. App. 2d 98, 100, 981 P.2d 266 (1999).

In response to the propositions set forth by the plaintiff, defendants insist they are independent insurance agents and that while they may have procured the requested insurance for Bichelmeyer Meats, there was no agency relationship between the parties whereby they agreed to determine the adequacy of the coverage. The uncontroverted stipulation of facts supports the defendants' argument. The insurance that was in effect at the time of the fire was provided by the Lindquist agency only after it had been given the specific terms which the corporation wanted and had been asked to beat a quote of $5,700 for the premium. In response to this request, the insurance agency obtained a policy with the specific coverage and limits requested. Even though this initial policy had expired, it was renewed by the corporation with no changes in coverage and the same coverage and limits were in effect at the time of the fire.

We have no idea what the relationship was prior to the request for this particular insurance policy, but the uncontradicted stipu-

lation of facts indicates that in obtaining this particular policy, Bichelmeyer Meats did not request that the defendants procure them a policy with adequate coverage, only that the defendants provide them a specific policy for a lesser premium than quoted. Under those circumstances, we agree with the trial judge that the insurance agencies had no duty to advise Bichelmeyer Meats as to whether the coverage it requested was adequate.

The law is clear in Kansas that an insurance agent or broker who undertakes to procure insurance for another owes to the client the duty to exercise the skill, care, and diligence that would be exercised by a reasonably prudent and competent insurance agent or broker acting under the same circumstances. *Marshel Investments, Inc. v. Cohen*, 6 Kan. App. 2d 672, 683, 634 P.2d 133 (1981). This is nothing more than saying that an insurance agent has a duty to exercise care under the circumstances. The facts in this case show there was no specific type of agency agreement between the parties. There is no argument that an express agency was involved. An implied agency would only exist where it appears from the statement and conduct of the parties that the intention was to clothe the agent with such an appearance of authority and when the agency was exercised, it would lead others to rely on the person's actions as being authorized by the principal. *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390-91, 710 P.2d 1297 (1985). The party asserting that an agency relationship exists has the burden of establishing the existence of the agency with substantial evidence that is clear and convincing in quality. *Barbara Oil*, 250 Kan. at 447-48. In this case, that burden was not satisfied.

There is a federal district court decision which illustrates the point involved in this action. In *Hartman v. Great Central Ins. Co.*, 915 F. Supp. 250 (D. Kan. 1996), a commercial building was burned to the ground, and the plaintiff claimed that the defendants had failed to procure sufficient commercial insurance to protect it. The court held that Kansas does not recognize any duty to procure adequate business property insurance in the absent of the agent undertaking to procure such insurance and went on to say:

"Hartman simply has not come forth with sufficient evidence from which a reasonable jury could find that he had expressly delegated to Nash-Finch the

authority to procure commercial insurance on his behalf or to assume any of the other delegable duties for which he sues. He does not cite any deposition testimony or written exhibits tending to show that he told a Nash-Finch representative to procure him commercial insurance in a requested amount, to determine his insurance needs, and the amount of insurance necessary to protect him in the event of a total loss, or to estimate the replacement value of his inventory and business personal property. There are no contracts, documents or other evidence of record from which to infer that the contractual relationship represented by the affiliation between Nash-Finch and Hartman expressly entailed Nash-Finch also procuring Hartman's requested insurance, determining his insurance needs, valuing his property for insurance purposes, or advising him on insurance coverage." 915 F. Supp. at 257-58.

The uncontradicted facts in this case do not show an agency relationship between the plaintiff and the defendants beyond the procurement of the specific insurance and limits requested. There was no evidence that Bichelmeyer Meats had any understanding with the defendants which would establish a duty to review the adequacy of insurance required. There was no conversation concerning the adequacy of the coverage or the value of the property insured. The plaintiff requested a specific policy, and the defendants provided it. There is no evidence that any other fiduciary duty existed between the parties. We hold there was no duty on behalf of the insurance agents to provide adequate coverage to Bichelmeyer Meats. The only duty imposed upon the insurance agents in this case was to provide the specific insurance requested, and they certainly did so.

Finally, Bichelmeyer Meats argues the trial court erred in granting summary judgment in favor of Atlantic concerning a coinsurance provision on its claim for lost business income. Bichelmeyer Meats argued that Atlantic was estopped to assert the coinsurance policy provision and that the provision was ambiguous. The trial court determined otherwise. We agree with the trial court.

Construction of an insurance policy is a question of law, and we may construe the policy and determine its legal effect without regard to the determination made by the trial court. *State Farm Mut. Auto. Ins. Co. v. Lane*, 25 Kan. App. 2d 223, 226, 961 P.2d 64, *rev. denied* 265 Kan. 886 (1998).

We have examined the coinsurance provision at issue and conclude that according to its unambiguous provisions, the total amount of business income loss was $15,730, which was paid by Atlantic to Bichelmeyer Meats.

Bichelmeyer Meats argues that Atlantic is estopped from asserting this coinsurance provision because it failed to comply with a 30-day provision for payment and notification as set forth in the insurance contract.

Briefly, Bichelmeyer Meats points to a provision in the policy which states: "We will pay for covered loss or damage within 30 days after we receive the sworn statement of loss." Bichelmeyer asserts the payment was not made within 30 days of the sworn statement of loss and, as a result, Atlantic is estopped to assert the provision. We disagree.

The citation of the provision in the policy on which Bichelmeyer relies is misleading because it eliminates an "if" clause. That clause reads that payment will be made within 30 days after the sworn statement of loss is received *if*: "(1) We have reached an agreement with you on the amount of loss" or "(2) An appraisal award has been made."

The uncontradicted facts are that the parties were unable to agree upon the amount of the loss within 30 days. The claim was paid in a manner consistent with the unambiguous provisions of the policy, and any argument by Bichelmeyer to the contrary is totally without merit.

The coinsurance provision in this policy was not ambiguous and will be enforced as written.

Affirmed.