(132 P.3d 790)

No. 93,953

TOM WENRICH AND SHERRY WENRICH, *Appellees*, v. EMPLOYERS MUTUAL INSURANCE COMPANIES, *Appellant*.

Opinion filed April 28, 2006.

*Marc A. Powell* and *Jennifer M. Hill*, of Powell, Brewer, & Reddick, L.L.P., of Wichita, for appellant.

*Stephen W. Brown*, of Megaffin & Brown, Chartered, of Pratt, for appellees.

Before GREENE, P.J., PIERRON and CAPLINGER, JJ.

GREENE, J.: Employers Mutual Insurance Companies (EMC) appeals a judgment of indemnity and attorney fees in favor of its insureds, Tom and Sherry Wenrich, on a claim for storm damage under their commercial property insurance policy. EMC argues that the district court erred in instructing the jury and submitting a special verdict question that allowed the jury to ignore a coinsurance provision in the policy. EMC also challenges the district court's award of attorney fees. We affirm.

## Factual and Procedural Background

EMC issued the Wenrichs a commercial property insurance policy on their business real and personal property in Pratt, Kansas, effective December 9, 2001. The declaration page designated an 80% coinsurance penalty, explained by the printed policy form as follows:

"If a Coinsurance percentage is shown in the Declarations, the following condition applies.

"**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

"Instead, we will determine the most we will pay using the following steps:

(**1**) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(**2**) Divide the Limit of Insurance of the property by the figure determined in Step (**1**);

(**3**) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (**2**); and

(**4**) Subtract the deductible from the figure determined in Step (**3**).

"We will pay the amount determined in Step (**4**) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself."

On May 7, 2002, the Wenrichs' property, including a service station building and canopies, storage building, and 1981 GMC pickup were damaged by wind and hail. Wenrichs reported a claim to their agent, and after an adjuster inspected the damage, EMC issued a check to the Wenrichs in September 2002 for $7,481.50. The Wenrichs cashed this check but apparently were not satisfied with the amount. In December 2003 counsel for the Wenrichs issued a demand letter for additional indemnity on the damaged property, and EMC issued a second check in January 2004 for $1,628.94 for "full and final settlement." This check was not cashed by the Wenrichs, and they shortly thereafter filed a petition against EMC seeking damages of $40,000 plus attorney fees.

After a formal pretrial order was entered, the matter was tried to a jury in late September 2004. The trial focused upon a host of issues, most of which are not material to this appeal, including the reasonable cost of repairs, whether the insureds provided an adequate basis to compute the loss, purported lack of financial interest of the insureds in some of the subject properties, and payment to and acceptance by the insureds. The principle issues on appeal surround instructions to the jury regarding the application of the coinsurance clause of the policy, and those issues seem to be related exclusively to a storage building located at 404 Pedigo in Pratt.

In its instructions to the jury, the district court included a modified version of PIK Civ. 3d 124.32, stating: "If you find that the

terms of the insurance policy on the issue of coinsurance are susceptible of more than one meaning, the policy provisions must be given the meaning which is most favorable to the policyholder." EMC objected to this instruction, arguing that there was no issue of policy ambiguity or "question of fact as to which of the two reasonable meanings is to be given."

The district court also included among five special verdict form questions a final question stating: "Has the defendant met its burden of proof that an underinsurance (co-insurance) penalty should be applied regarding any damage to the storage building at 404 Pedigo?" EMC also objected to this question, arguing that "the coinsurance penalty is plainly in the insurance policy and that's a matter for the Court to decide if it should be applied and, therefore, we don't think that's a question for the jury."

The jury returned a verdict in favor of EMC on the cost to repair, answering one of the special verdict questions, "We agree with all adjustments with insurance company," but it rejected EMC's claim for a coinsurance penalty on the Pedigo storage building, finding that EMC did not sustain its burden of proof that the coinsurance penalty should be applied. The district court entered judgment against EMC for $8,724.01, together with attorney fees and costs of $14,310.57. EMC appeals.

### Did the District Court Err in Denying a Motion to Alter or Amend the Judgment for the Purported Amount of the Coinsurance Penalty?

On appeal EMC argues that its "primary" issue is whether the coinsurance deduction for $6,994.07 is enforceable as a matter of contract law. Notably, EMC did not move for partial summary judgment or for a directed verdict on this basis; apparently, it moved posttrial to alter or amend the judgment under K.S.A. 60-259(f), but this motion is not in the record on appeal. Because we have the transcript of argument on the posttrial motion, we are able to glean the thrust of EMC's argument to the district court. We review the district court's denial of a motion under K.S.A. 60-259(f) for an abuse of discretion. *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004); 11 Wright,

Miller & Kane, Federal Practice and Procedure: Civil 2d § 2818, pp. 197-98 (1995) (abuse of discretion is well-settled standard of review on motion to alter or amend).

EMC's argument suggests, first, that the coinsurance clause in the policy is not ambiguous and is capable of enforcement as a matter of law, and second, that the evidence of replacement cost (purportedly necessary for *calculating* the coinsurance penalty) was undisputed.

The term "coinsurance" means a relative division of the risk between the insurer and the insured. 15 Couch on Insurance, § 220:3 (3d ed. 2005).

> "Coinsurance clauses are provisions in insurance policies that require the insured to maintain coverage to a specified value of the property, and stipulate that, upon his or her failure to do so, he or she becomes a coinsurer and must bear his or her proportionate part of the loss. For example, insurance policies which insure against particular hazards such as fire, water, or wind damage often specify that the owner of the property may not collect the full amount of insurance for a loss unless the insurance policy covers at least some specified percentage, usually about 80 percent of the replacement cost of the property. To the extent that the property is underinsured, the insured becomes a coinsurer with the underwriter." Couch § 220:3, p. 220-9.

In Kansas, coinsurance clauses are enforceable and have been stated to be "a plain limitation of liability." See *Dolan Mercantile Co. v. Wholesale Grocery Subscribers*, 131 Kan. 374, 385, 291 Pac. 935 (1930).

### *Were the coinsurance provisions in the policy ambiguous?*

EMC argues that the coinsurance provisions in the Wenrichs' policy are not ambiguous and should be enforced as a matter of law. The Wenrichs argue that the term "value" as used in the co-insurance provisions renders these provisions ambiguous, apparently because it is not clear whether the "replacement cost" optional coverage applies to displace "value" in its plain and ordinary sense. This is precisely the same argument made to the district court in advocating an instruction for ambiguity. Whether a written instrument is ambiguous is a question of law. *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 576, 56 P.3d 789 (2002). For reasons

discussed below, we hold that there was no ambiguity in the co-insurance provisions.

Turning to applicable policy provisions, there is no dispute that the declarations page of the Wenrichs' policy specifies that the replacement cost optional coverage applies to the real property at issue. The language of that optional coverage provides that "Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form." The phrase "Loss Condition, Valuation" is a reference to section "E. Loss Conditions" and subsection "7. Valuation," which states that "[w]e will determine the value of Covered Property in the event of loss or damage as follows: **a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d., e.,** and **f.** below." Accordingly, the replacement cost option has no *express* application to the coinsurance provisions contained at section "F. Additional Conditions" and subsection "1. Coinsurance," but these provisions reference "the value of Covered Property at the time of loss" and inescapably incorporate the replacement cost option when designated by the declarations page.

We agree with EMC that the replacement cost optional coverage must be construed as altering the methodology for determining "the value of Covered Property in the event of loss" and is therefore inherently incorporated into the coinsurance provisions. There is no ambiguity in the coinsurance provisions because we cannot conceive of any reasonable alternative meaning to the phrase "the value of Covered Property at the time of loss" other than replacement cost pursuant to the optional coverage. If the optional coverage had not been declared, the coinsurance provision would be interpreted consistent with the valuation provision to require use of "actual cash value." The clear effect of the optional coverage is the substitution of "replacement cost" for "actual cash value" in determining "the value of Covered Property in the event of loss or damage." In the absence of more than one possible meaning to a word or phrase in a legal instrument, ambiguity does not exist. See *Marquis v. State Farm Fire & Cas. Co.,* 265 Kan. 317, Syl. ¶ 4, 961 P.2d 1213 (1998).

*Were the coinsurance provisions enforceable as a matter of law?*

Concluding that there was no ambiguity in the coinsurance provisions does not, however, render the provisions enforceable as a matter of law where application inherently requires a determination of fact, specifically the replacement cost of the property at the time of loss. Under the EMC policy form, the coinsurance penalty applies "if the value of the Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property."

EMC argues that application of a coinsurance penalty presents a pure question of law, citing *Bichelmeyer Meats v. Atlantic Ins. Co.*, 30 Kan. App. 2d 458, 465-66, 42 P.3d 1191 (2001), in which this court affirmed the district court's finding that the coinsurance provision in the insurance policy was not ambiguous. EMC makes much of the *Bichelmeyer* court's statements that construction of an insurance policy is a question of law and that an appellate court may construe the policy without regard to the district court's interpretation of such. EMC then relies on this language to argue the district court in the present case should not have allowed the jury to determine whether it met its burden to show applicability of the coinsurance provisions. Importantly, however, the procedural posture of *Bichelmeyer* differed from that of the present case, in that the issues presented in *Bichelmeyer* were resolved by summary judgment. See 30 Kan. App. 2d at 460-61. Here, there is no indication either party ever sought resolution via summary judgment. Thus, the mere fact the district court evaluated the legal propriety of the coinsurance provision in *Bichelmeyer* does not mean the district court erred in submitting a coinsurance issue to the jury under the circumstances presented in this case.

In fact, application of a coinsurance clause generally presents a mixed question of fact and law. Although preliminary construction and application of coinsurance provisions may present legal issues, whether such a clause applies and justifies a coinsurance penalty in a particular case requires a determination of whether the insured was underinsured or, as stated in EMC's policy, whether the "value of the covered property at the time of loss times the Coinsurance

percentage . . . is greater than the Limit of Insurance"; this is clearly a fact question. Although there is an apparent scarcity of case law on the question, we note that the Wisconsin Court of Appeals has held in an unpublished opinion that an insurer is not entitled to judgment notwithstanding the verdict based on a co-insurance provision where it failed to request that the jury make the requisite factual findings needed to support application of the clause. See *Jonas Builders, Inc. v. United States Fidelity & Guaranty Co.*, 2001 WL 1474775 (Wis. App., unpublished opinion filed November 21, 2001). We agree.

### *Was there disputed evidence on the inherent fact question?*

Although EMC argues that there was no dispute as to the evidence of replacement value for the subject property, we disagree. We note that there is evidence that the "value" of the subject property was as little as $25,000, and other witnesses opined that replacement cost was as little as $33,000 to as much as $60,000, and disagreed as to replacement of the slab, the manner and cost of roof replacement, and other details. This evidence suggests that the proper application of the coinsurance provisions of the Wenrichs' policy presented a mixed question of law and fact, and that the district court did not err in refusing to grant EMC's posttrial motion to enforce the coinsurance penalty as a pure matter of law.

### *Did the district court abuse its discretion in denying posttrial relief?*

The district judge denied EMC's posttrial motion, stating:

"There were enough factual disputes in my opinion that it was appropriate to let the jury answer that question. Maybe it's one of these mixed questions of fact and law that I don't know that you can, you can separate it out.

"The Court would deny the motion to alter or amend. I think we did as good a job as we could with a difficult factual matter. A difficult matter of applying provisions of an insurance policy and a difficult matter that, for example, if there was going to be the Court determining as a matter of law an issue of a coinsurance penalty, I think that should have been done by a motion for partial summary judgment, or something of that nature prior to trial.

. . . .

"After the dust has settled, we can Monday morning quarterback all we want to. The dust has settled. The jury says it's appropriate that there be a verdict in

favor of Mr. and Mrs. Wenrich because there shouldn't have been a coinsurance penalty applied. That's where the dust has settled and I don't intend to restir it today and the motion to alter or amend judgment is denied."

In the final analysis, we cannot conclude that the district court abused its discretion in denying posttrial relief to EMC. Indeed, we have previously recognized that motions to alter and amend may properly be denied where the moving party could have, with reasonable diligence, presented the argument prior to the verdict. See *Blevins v. Hiebert,* 13 Kan. App. 2d 318, 323, 770 P.2d 486 (1989). Despite our view that EMC's coinsurance clause was not ambiguous, there was an inherent factual issue that was proper for resolution by the jury.

It is clear from the record that EMC may have only belatedly understood and realized that coinsurance issues might have been addressed before trial with a motion for partial summary judgment. At the outset of its posttrial motion argument, counsel admitted, "After the dust settled after this trial we dug into the Kansas case law a little bit on this question on the coinsurance penalty issue and that's what we're here on." In fact, the pretrial order approved by counsel for both parties identified the following *as issues of both fact and law:* "What was the 'value' of Plaintiffs' insured property on May 7, 2002, for purposes of calculating an under-insurance penalty?" and "Were Plaintiffs under-insured and, if so, to what extent?" Additionally, EMC specifically identified the following as an issue of fact in the pretrial order: "What is the replacement cost of Plaintiffs' metal building, insured by Defendant, damaged by wind or hail, May 7, 2002, and/or what is the actual cash value of Plaintiffs' property insured by Defendant, damaged by wind or hail, May 2 [*sic*], 2002?" Neither party identified as a question of law the specific issue whether a coinsurance penalty should apply, and we deem this omission by EMC as particularly damning to its posttrial position and argument on appeal.

As the Wenrichs properly state, a pretrial order has the full force of other orders entered by the court and controls the subsequent course of litigation unless modified to prevent manifest injustice. See K.S.A. 60-216(e); *Sampson v. Hunt,* 233 Kan. 572, 578, 665 P.2d 743 (1983). In the absence of an attempt to modify the pretrial

order, such order is binding and controls the subsequent course of trial. *Sieben v. Sieben,* 231 Kan. 372, 377, 646 P.2d 1036 (1982).

Granted, EMC objected to a proposed question for the special verdict form regarding whether the Wenrichs met their burden to prove the coinsurance penalty should apply, briefly stating such was a question for the court to decide. Nevertheless, the determination of whether and to what extent the Wenrichs were underinsured, such that the coinsurance penalty would apply, necessarily depended on the replacement cost of the property. As previously noted, EMC expressly—and correctly—agreed the issues of value and whether the Wenrichs were underinsured framed questions of fact.

The district court did not abuse its discretion in denying posttrial relief.

### *Did the District Court Err in Its Instructions and Special Verdict Question to the Jury Regarding the Coinsurance Clause?*

EMC specifically challenges two aspects of the district court's instructions to the jury: (i) the instruction on resolving ambiguity and (ii) the special verdict question regarding applicability of the coinsurance penalty.

#### *Instruction on resolving ambiguity*

With regard to the instruction on resolving ambiguity within the policy, EMC objected on the ground that there was no ambiguity shown. On appeal, EMC challenges this instruction on the basis that it "does not include all the applicable rules of construction for appropriate interpretation for [*sic*] an insurance policy." Further, EMC briefly refers to its prior contention that the jury should not have been allowed to interpret the policy and maintains the policy was unambiguous.

As a preliminary matter, the Wenrichs question whether EMC waived its right to challenge any jury instructions due to its failure to submit proposed jury instructions in accordance with the pretrial order. Regardless of whether EMC submitted proposed instructions, we are not inclined to hold that EMC waived *all* challenges

to jury instructions simply by failing to submit its own proposed instructions.

The instruction provided by the district court was slightly modified from PIK Civ. 3d 124.32, which reads: "When the terms of the insurance policy (*including any endorsements attached thereto*) are susceptible of more than one meaning, the policy provisions must be given the meaning which is most favorable to the policyholder." The PIK Civ. 3d 124.32 Notes on Use acknowledge that ambiguity in a policy may present questions of either law or fact and state that in the case of the latter, this instruction may guide the jury in resolving the issue.

Given our holding that there was no ambiguity in the coinsurance provisions of EMC's policy, it was error to submit this instruction to the jury. There was simply no ambiguity to be resolved by the jury.

Nevertheless, when the jury instructions are considered together and read as a whole, it appears any error instructing the jury on how to resolve any ambiguity in the policy was harmless, at best. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. *Hawkinson v. Bennett*, 265 Kan. 564, 577, 962 P.2d 445 (1998). Here, EMC has not demonstrated prejudice; there is simply no way to determine whether the jury's finding that EMC failed to meet its burden with regard to the coinsurance penalty was premised on a finding that the provision was ambiguous. Accordingly, we hold that any error in giving this instruction was harmless.

### *Special verdict question*

With regard to the special verdict question, EMC objected, arguing that the district court, rather than the jury, should decide whether a coinsurance penalty applied. On appeal, EMC argues the special verdict question was too broad because it allowed the jury to determine what the terms of the policy meant and too vague because the policy set forth a specific formula for determining whether the coinsurance penalty applied. Again, EMC claims that the only factual issue for the jury to decide was the replacement cost of the storage building, yet EMC submitted no alternate spe-

cial verdict question in this regard (nor did it argue that one was needed) to the district court.

Both parties state appellate review of the propriety of a special verdict question is subject to the clearly erroneous standard. We disagree because, unlike *Noon v. Smith,* 16 Kan. App. 2d 818, 820, 829 P.2d 922 (1992), here EMC objected to the question. In *Anderson v. Heartland Oil & Gas, Inc.,* 249 Kan. 458, 472, 819 P.2d 1192 (1991), *cert. denied* 504 U.S. 912 (1992), our Supreme Court stated: "Whether to submit a special verdict form or instruct the jury on the law and how it applies to each count against each defendant is within the sound discretion of the trial judge." Hence, it appears EMC's claim of error must be reviewed for abuse of discretion. Judicial discretion is abused only when no reasonable person would take the view adopted by the district court. *Varney Business Services, Inc. v. Pottroff,* 275 Kan. 20, 44, 59 P.3d 1003 (2002).

The Wenrichs maintain the special verdict question was proper in light of the pleadings, pretrial order, and evidence presented at trial.

"[A] special verdict [is] 'a special written finding upon each issue of fact.' Its provisions are permissive, not mandatory and where the court determines to use a special verdict, it has discretion as to the nature, scope, and form of the questions to be put to the jury. [Citation omitted.] Where a case is submitted for special verdict, the issues of fact submitted to the jury should cover all issues raised by the pleadings, the pretrial order, and the evidence. Generally speaking, only ultimate fact questions so raised which are important to the final determination of the controversy should be submitted. [Citation omitted.]" *Bott v. Wendler,* 203 Kan. 212, 219-20, 453 P.2d 100 (1969).

More importantly, in attempting to reach a controlling fact issue, a question of law may be so intermingled that it cannot be separated, and it is proper to submit a question which combines both fact and law. 203 Kan. at 220. From a review of the record on appeal, the pretrial order and trial transcript in particular, we believe the district court's decision to submit the special verdict question at issue to the jury was within the court's discretion. As previously explained, whether a coinsurance penalty was warranted was heavily fact dependent, and the replacement cost of the prop-

erty remained in dispute. The jury had adequate information via the testimony presented and the insurance policy to utilize the formula set forth in the policy and assess whether the Wenrichs were underinsured. The jury could then determine whether EMC met its burden to show that a coinsurance penalty should apply. As the Wenrichs correctly note, the jury was aided in this determination by the district court's instructions, which included a definition of "burden of proof."

Moreover, EMC's agreement to the issues of fact stated in the pretrial order and failure to object to the pretrial order's omission of any questions of law (including whether the coinsurance provision was ambiguous and whether it should apply) precludes EMC's challenge on appeal to the district court's submission to the jury of the issue of whether a coinsurance penalty should apply. See *Popp v. Popp*, 204 Kan. 329, 332, 461 P.2d 816 (1969) (rejecting plaintiff's attempt to challenge district court's submission of assumption of risk question to jury on grounds that such was question of law, holding "[h]aving agreed to submit the question of assumption of risk to the jury and having been defeated on the point, the plaintiff may not now complain").

Clearly, the better approach would have been the submission of a special verdict question that simply asked the jury to determine the replacement cost of the Pedigo property at the time of loss. This was the sole fact issue requiring resolution for the court's application of the coinsurance clause; the calculation of the penalty was straightforward once the "value of covered property at the time of loss" was determined. We cannot fault the district court, however, for the approach chosen; again, EMC did not submit proposed special verdict questions that were consistent with the pretrial order, did not advocate for a more simplified and fact-based special verdict question, and did not offer to assist the court in this regard except to object to the special verdict question proposed by the court. We concede that a proper understanding and application of the coinsurance provisions may have taken an above-average jury, but we cannot conclude that the question was so far beyond comprehension that its submission was an abuse of discretion.

Under these circumstances, we hold the district court did not abuse its discretion in submitting a special verdict question regarding application of the coinsurance provisions in the policy of insurance.

### Did the District Court Err in Its Award of Attorney Fees?

Finally, EMC argues the district court's award of attorney fees should be vacated or at least reduced. First, EMC contends that because the Wenrichs should not have prevailed in their attempt to recover the coinsurance penalty, they should not be allowed to recoup their attorney fees in the matter. Obviously, this claim is now moot.

EMC also challenges the basis and amount of the attorney fees award. An appellate court reviews both a district court's determination of the reasonableness of claimed attorney fees as well as the court's actual award of attorney fees utilizing an abuse of discretion standard. *Davis v. Miller*, 269 Kan. 732, 748-50, 7 P.3d 1223 (2000). When reviewing an award of attorney fees, an appellate court will not reweigh the evidence or reassess the credibility of witnesses. *In re Marriage of Burton*, 29 Kan. App. 2d 449, 454, 28 P.3d 427, *rev. denied* 272 Kan. 1418 (2001). The district judge is an expert in the area of attorney fees and can draw on and apply his or her own knowledge and expertise in determining their value. *Davis*, 269 Kan. at 750. Although an appellate court is also an expert on the reasonableness of attorney fees, it will not substitute its judgment for that of the district court unless in the interest of justice such is necessary. 269 Kan. at 751.

Consistent with the Wenrichs' amended pleadings and motion, the district court cited K.S.A. 40-908 as authority for its award of attorney fees. This statute provides:

"[I]n all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company before the commencement of the action in

which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

K.S.A. 40-908 clearly provided the district court authority to award attorney fees in this matter. Thus, we cannot reverse the district court's decision to award attorney fees absent a showing that the court abused its discretion, and no such abuse of discretion is apparent.

EMC claims the district court's award of $14,000 was an unreasonable sum given that the Wenrichs did not prevail on all their claims. EMC thus argues the attorney fee award should have been tailored only to the time counsel spent on the issues on which the Wenrichs prevailed—primarily, whether a coinsurance penalty was warranted.

In their written request for attorney fees, the Wenrichs referred to the factors set forth in Rule 1.5(a) (2005 Kan. Ct. R. Annot. 397) of the Kansas Rules of Professional Conduct (KRPC). Indeed, our Supreme Court has urged consideration of these factors in determining the reasonableness of attorney fees. See *Davis*, 269 Kan. at 751. As EMC notes, one of these factors is the amount of money involved and the results obtained under KRPC 1.5(a)(4), but this is only one of the eight factors identified. Of particular importance to the present case, another factor refers to the time and labor required, the novelty and difficulty of the issues involved, and the skill required to perform the service properly. KRPC 1.5(a)(1). Counsel for the Wenrichs testified at some length in this regard.

In rendering its decision, the district court adopted the reasons set forth in the Wenrichs' motion for attorney fees. Importantly, the district court did not award the Wenrichs the full amount of attorney fees sought. Rather, the court reduced the award to account for the fact that the Wenrichs did not prevail on all claims. It would be an exercise in futility to attempt to separate the services provided by counsel any further, given the nature of the claims asserted and the intermingling of the evidence relevant to each claim.

Considering the district court's expertise in the area and the evidence submitted by the Wenrichs regarding their counsel's ef-

forts, we cannot conclude the district court abused its discretion. Accordingly, we affirm the district court's award of attorney fees.

Affirmed.