**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BOARDWALK APARTMENTS,
L.C.,

      Plaintiff Counter Defendant-
      Appellee,

v.

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.,

      Defendant Counterclaimant-
      Appellant.

No. 15-3070

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:11-CV-02714-JAR)**
_____

Matthew Jon Smith, Smith Rolfes & Skavdahl, Cincinnati, Ohio, for
Defendant Counterclaimant-Appellant.

Mark G. Arnold, Husch Blackwell LLP, St. Louis, Missouri (William A.
Lynch, Kirsten A. Byrd, and Stacey M. Bowman, Husch Blackwell, LLP,
Kansas City, Kansas, with him on the brief), for Plaintiff Counter
Defendant-Appellee.
_____

Before **GORSUCH**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

Boardwalk Apartments, L.C. sued State Auto Property and Casualty Insurance Co. for breach of an insurance policy, contending that State Auto had underpaid on the policy after one of Boardwalk's eight apartment buildings (Building 1) was destroyed in a fire.[1] In district court, State Auto contended that Boardwalk was underinsured under the policy's coinsurance provision. Under this provision, Boardwalk's insurance benefits were reduced if the value of the Boardwalk apartment complex exceeded the policy limit.

Before trial, the district court issued two rulings that underlie this appeal. First, the court held that for purposes of the policy's coinsurance provision, the value of the apartment complex did not include the cost of complying with laws and ordinances regulating the construction and repair of buildings. (We refer to these costs as "law-and-ordinance costs.") Second, the district court excluded reference at trial to either the coinsurance provision or the possibility that Boardwalk was underinsured.

At trial, the jury valued the Boardwalk complex below the policy limit. Based on this valuation, the district court concluded that Boardwalk was not underinsured under the coinsurance provision. In addition to valuing the apartment complex, the jury found that State Auto had

---

[1] Boardwalk also sued for misrepresentation and negligence. These claims are not involved in the appeal.

2

underpaid for the loss of Building 1. As a result, the court awarded damages to Boardwalk.

State Auto appeals, and we conclude that the district court

- abused its discretion by excluding reference to the coinsurance provision and

- incorrectly construed the coinsurance provision.

In light of these errors, we reverse and remand for a new trial.

**I.     This appeal turns on the meaning and effect of the coinsurance provision in the Boardwalk policy.**

Central to the appeal is the meaning and application of the coinsurance provision.

**A.     After Boardwalk submitted its claim for the loss of Building 1, State Auto asserted that Boardwalk was underinsured, triggering the coinsurance provision.**

The coinsurance provision requires Boardwalk to purchase enough insurance to fully cover the value of the apartment complex. If the value of the apartment complex exceeded the policy limit ($7.4 million), Boardwalk would be considered underinsured and the coinsurance provision would require a reduction in the amount owed for a covered loss.

State Auto invoked this provision, claiming that Boardwalk was underinsured, which would reduce the amount owed to Boardwalk for the loss of Building 1. With this reduction, State Auto paid roughly $2.1

3

million to Boardwalk.[2] Boardwalk alleged that it was owed more and denied that it was underinsured.

The dispute resulted in two suits between Boardwalk and State Auto. The first was a declaratory judgment action brought by State Auto in the Western District of Missouri. That suit ended in 2009 after an appeal to the Eighth Circuit Court of Appeals. *See State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.* (*Boardwalk I*), 572 F.3d 511 (8th Cir. 2009). The second suit, which resulted in this appeal, was brought by Boardwalk in the District of Kansas.

**B.    The district court disallowed reference to coinsurance or the effect of underinsurance.**

In the second suit, Boardwalk claimed that State Auto had breached the insurance contract by failing to fully pay for the loss of Building 1. In response, State Auto maintained its earlier position that Boardwalk was underinsured, triggering the coinsurance provision and reducing the amount owed to Boardwalk under the policy. But the district court excluded reference to coinsurance and the effect of underinsurance.

Without knowing why underinsurance would matter, the jury found that

---

[2]    Boardwalk asserts that State Auto relied on a Kansas insurance statute rather than the coinsurance provision to calculate the amount of the policy benefits; State Auto maintains that the coinsurance provision and the Kansas statute provided alternative grounds for the payment amount. This dispute is immaterial to our decision.

- the replacement cost of Building 1 was $3.9 million, $1.8 million more than State Auto's original payment and

- the value of the Boardwalk complex was $6.7 million, which was below the policy limit of $7.4 million.[3]

Based on these jury findings, the district court declined to apply the coinsurance provision and awarded damages to Boardwalk.

## C. The district court erred in excluding reference to the coinsurance provision and in adopting Boardwalk's interpretation of the provision.

State Auto appealed on numerous grounds. We agree with State Auto on two of these grounds, concluding that the district court

- abused its discretion by excluding reference at trial to the coinsurance provision and the possibility that Boardwalk was underinsured and

- erred by ruling that for purposes of the coinsurance provision, the value of the apartment complex should not include the cost of complying with laws and ordinances.

According to State Auto, the district court also erred by dismissing State Auto's affirmative defenses and counterclaims for fraud and misrepresentation. We reject this contention.

---

[3] The jury also

- found that Boardwalk had sustained consequential damages totaling $2.6 million and

- made findings enabling the district court to calculate the insurance benefits for lost-business income.

5

State Auto's remaining arguments involve alleged errors made during or after the trial. Because we remand for a new trial, we need not address these arguments.

## II. The district court abused its discretion by excluding reference to the coinsurance provision and the effect of underinsurance.

Before trial, the district court granted Boardwalk's motion in limine, relying on Federal Rule of Evidence 403 to exclude reference to the coinsurance provision and the effect of underinsurance. State Auto argues that this ruling constituted an abuse of discretion.

Because the coinsurance provision was highly probative and presented only a minimal risk of unfair prejudice or confusion, we agree with State Auto.

### A. We review the district court's ruling under Rule 403 for abuse of discretion, giving the excluded evidence its maximum reasonable probative value and minimum reasonable risk of unfair prejudice or jury confusion.

The district court excluded any reference to the coinsurance provision or the effect of underinsurance, relying on Federal Rule of Evidence 403. This rule permits the district court to exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or jury confusion. Fed. R. Evid. 403. We review the district court's exclusion of evidence under Rule 403 for an abuse of discretion. *Eller v. Trans Union, LLC*, 739 F.3d 467, 474 (10th Cir. 2013).

6

Under the abuse-of-discretion standard, we will not reverse an evidentiary ruling "absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995). Nevertheless, we regard the power to exclude relevant evidence as extraordinary, to be exercised sparingly. *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985). In deciding whether to exercise this extraordinary power, the district court must give the evidence its maximum reasonable probative force and the minimum reasonable risk of unfair prejudice or confusion. *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000); *SEC v. Peters*, 978 F.2d 1162, 1171 (10th Cir. 1992).

## B. The district court excluded reference to the coinsurance provision and the effect of underinsurance.

Invoking Rule 403, the district court excluded reference to the coinsurance provision and the effect of underinsurance. In excluding these references, the court reasoned that the jury did not need to know about coinsurance or underinsurance to decide the two ultimate issues at trial:

1. the cost of replacing Building 1, which was the amount of Boardwalk's loss under the policy, and

2. the value of the entire apartment complex, which would determine whether Boardwalk was underinsured for purposes of the coinsurance provision.

7

If the jury valued the apartment complex above the policy limit of $7.4 million, the district court would apply the coinsurance provision to determine the amount owed by State Auto. The court explained that it was adopting this approach to avoid confusing the jury with the complexities of the coinsurance provision.

## C. The district court abused its discretion by excluding reference to the coinsurance provision or the effect of underinsurance.

In our view, the district court's explanation for its ruling does not justify the exclusion of reference to the coinsurance provision or the effect of underinsurance. The jury was asked to value the apartment complex without knowing why this valuation mattered. The valuation was critical because it directly affected the application of the coinsurance provision, which would have significantly reduced the amount owed if Boardwalk were underinsured. Thus, the parties had far different incentives in valuing the apartment complex, incentives counter to what the jury would naturally expect. In these circumstances, the exclusion of any evidence involving coinsurance or underinsurance constituted an abuse of discretion.[4]

---

[4] According to State Auto, exclusion of the coinsurance provision also precluded any explanation of a good-faith basis for State Auto's calculation of the amount owed to Boardwalk. Because we reverse and remand on the basis of State Auto's alternative arguments about the context of the coinsurance provision and Boardwalk's incentive to urge a low value for the complex, we need not address State Auto's explanation for its decision to pay roughly $2.1 million.

### 1. The coinsurance provision was highly probative of State Auto's defense.

Applying Rule 403, the district court assigned minimal probative weight to the coinsurance provision and concluded that the jury did not need to know about the provision. But after giving the coinsurance provision its maximum reasonable probative value, we respectfully disagree with the district court's assessment. *See SEC v. Peters*, 978 F.2d 1162, 1171 (10th Cir. 1992) (explaining that when reviewing the exclusion of evidence under Rule 403, the court must give the excluded evidence its maximum reasonable probative value).

The coinsurance provision was highly probative regarding State Auto's contention that Boardwalk was underinsured. The district court may well have been right that it could apply the coinsurance provision based on the jury's valuation of the apartment complex. But even so, the jury needed to know about the coinsurance provision to understand why valuation of the apartment complex would matter and why Boardwalk, the insured party, had an incentive to value the complex below the $7.4 million policy limit.

When the jurors went about valuing the apartment complex, some would inevitably be puzzled. Because insurers ordinarily pay based on the value of the covered property, insurers usually have an incentive to assess low values and insureds ordinarily have an incentive to claim high values.

9

But because of the coinsurance provision, the incentives here were the opposite of what the jury would have expected. As the insured, Boardwalk had an incentive to urge a low value for the entire complex to avoid the coinsurance penalty; and State Auto, as the insurer, had an incentive to urge a high value to trigger the coinsurance provision. Surely the jury wondered why the insured was insisting on a value for the complex that was below the insurer's valuation.

But because of the district court's ruling, State Auto could not explain or address Boardwalk's incentive in the presence of the jury. Unaware of Boardwalk's incentive to urge a low valuation, the jury could not properly weigh Boardwalk's assertion that the complex was worth only $6.7 million.

For example, State Auto contends that Boardwalk previously asserted a value of $13.3 million for the apartment complex during the Missouri litigation. But, State Auto maintains, Boardwalk then reduced its valuation to $6.7 million during this litigation, after the Missouri litigation had established the enforceability of the coinsurance provision. By excluding reference to the coinsurance provision, the district court prevented State Auto from using this discrepancy to show why a low valuation would benefit Boardwalk.

Because the jury did not learn about Boardwalk's incentive for a low valuation, Boardwalk was able to portray its valuation as generous and

10

impartial. For example, in its closing argument, Boardwalk exploited the jury's lack of awareness about the coinsurance provision, arguing: "And remember, it doesn't do us any good for that number [the valuation of the entire complex] to be higher than it is really. This is the number. $6,697,509." Appellant's App'x at 5129. This argument was correct in a literal sense: Boardwalk had no incentive to urge a high valuation for the apartment complex. But Boardwalk had an enormous incentive, unknown to the jury, to urge a low valuation.

Boardwalk also alluded in its closing to State Auto's incentive to urge a valuation of the apartment complex that was artificially high. Although Boardwalk boasted during its closing that it had no reason to manipulate the apartment complex's valuation, Boardwalk accused State Auto of distorting the valuation because it "want[ed]" the valuation to be "high." *Id.* at 5130 (Boardwalk arguing in closing that State Auto presented a figure of approximately $15 million for the value of the entire complex, which "was like crazy" "[b]ecause they [State Auto] want it high"). Thus, Boardwalk hinted at State Auto's incentive to assert a high valuation without acknowledging that Boardwalk had an equally strong incentive to assert a low valuation.

With the presence of a coinsurance provision excluded, the jury never knew about the strong incentives that Boardwalk and State Auto had to assert their respective valuations of the apartment complex. As a result,

11

the jury was asked to value the apartment complex without any guidance on why this valuation mattered, why State Auto might desire a high valuation, or why Boardwalk might want a low valuation. The coinsurance provision and the resulting incentives were essential for the jury to know in assessing the parties' valuations of the apartment complex.

> **2.** **The coinsurance provision presented only a minimal risk of unfair prejudice or confusion.**

The district court excluded reference to the coinsurance provision on the ground that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice or jury confusion. In reviewing this determination, we must assume that the excluded evidence posed the least reasonable danger of unfair prejudice or confusion. *See SEC v. Peters*, 978 F.2d 1162, 1171 (10th Cir. 1992) (explaining that when reviewing exclusion of evidence under Rule 403, we must give excluded evidence its minimum reasonable prejudicial value).

The district court did not identify the danger of unfair prejudice or confusion. But at various points, the court suggested two possible grounds for confusion or prejudice: (1) the confusing nature of the coinsurance provision and (2) the fact that the Missouri litigation had already resolved some interpretative questions about the Boardwalk policy. In our view, these grounds reflect only a minimal risk of unfair prejudice or jury confusion.

12

First, in its ruling in limine, the district court suggested that it was excluding the coinsurance provision in part because of the provision's "confusing nature." Appellant's App'x at 2110. Yet later, in denying State Auto's motion for a new trial, the district court explained that the complexity of the "coinsurance concept" was not the reason for exclusion of the coinsurance provision. *Id.* at 3480. We are unsure how to reconcile these two statements.

But whatever the district court meant, State Auto's proposed use of the coinsurance provision did not risk any meaningful jury confusion. Calculating the amount owed under the coinsurance provision may have been complex, but State Auto did not ask for the jury to make this calculation. Instead, State Auto sought only to elicit evidence that there was a coinsurance provision that would reduce the amount owed if Boardwalk had been underinsured. There is nothing particularly complex about this concept.

Second, the district court pointed to "the degree to which [the coinsurance provision] had been interpreted by this Court on summary judgment and in accordance with the prior Missouri litigation." *Id.* But State Auto did not want to relitigate these interpretations or to address the mechanics of the coinsurance provision. Instead, State Auto merely wanted to use the coinsurance provision to establish context for the valuation of the apartment complex and to show why Boardwalk wanted the jury to

13

press for a low figure. These uses of the excluded evidence would not have required discussion of any interpretations made in either the Missouri litigation or the summary judgment ruling.

The district court identified no other source of unfair prejudice or jury confusion posed by the existence of a coinsurance provision, and we can discern none in the record. In our view, the existence of the coinsurance provision presented only minimal risk of unfair prejudice or confusion.

**3. Because the danger of unfair prejudice or jury confusion did not substantially outweigh the probative value, the district court abused its discretion by excluding reference to the coinsurance provision or the effect of underinsurance.**

Rule 403 permits the exclusion of relevant evidence only when the risk of unfair prejudice or confusion "substantially outweigh[s]" the evidence's probative value. Fed. R. Evid. 403. In our view, the coinsurance provision was highly probative and presented only minimal danger of unfair prejudice or confusion. The district court thought differently, but did not explain why it feared jury confusion from the mere mention of coinsurance and the effect of underinsurance. In the absence of such an explanation, we conclude that the district court abused its discretion.

14

**D. State Auto was prejudiced by the district court's abuse of discretion, requiring us to reverse and remand for a new trial.**

Even if a district court abuses its discretion by improperly excluding evidence under Rule 403, we will not reverse on this ground unless the error affected a party's substantial right. *Eller v. Trans Union, LLC*, 739 F.3d 467, 474 (10th Cir. 2013). In our view, the district court's error substantially prejudiced State Auto, requiring reversal and remand for a new trial.

Boardwalk argues that any error would have been harmless because State Auto did not prove that Boardwalk was underinsured. But even if Boardwalk is right about State Auto's evidentiary proffer at trial, the district court's ruling could have affected State Auto's strategy, causing State Auto to withhold evidence showing Boardwalk's failure to fully insure the apartment complex. We will not fault State Auto for failing to develop a defense that was improperly constrained by the district court's ruling.

The ruling was prejudicial, not harmless, because it

- impeded State Auto in its cross-examinations of Boardwalk witnesses about their possible motivation to minimize the value of the apartment complex,

- limited State Auto's ability to explain Boardwalk's reduction in its valuation of the apartment complex from $13.3 million to $6.7 million, and

15

- allowed Boardwalk to tout its own credibility regarding the value of the apartment complex while preventing State Auto from calling Boardwalk's credibility into question.

As a result of these constraints, Boardwalk was able to appear generous, modestly valuing the apartment complex to a jury unaware that a low valuation would help Boardwalk obtain a larger payout.

In these circumstances, we conclude that the district court's erroneous ruling prejudiced State Auto. Accordingly, we reverse the district court's decision to exclude reference to the existence of a coinsurance provision and the effect of underinsurance. Based on this reversal, we remand for a new trial.

## III. The district court erred by construing the coinsurance provision to exclude law-and-ordinance costs from the apartment complex's replacement cost.

In awarding partial summary judgment to Boardwalk, the district court interpreted the coinsurance provision to exclude law-and-ordinance costs from the value of the apartment complex. State Auto correctly argues that the value of the apartment complex should include law-and-ordinance costs. Because the district court's erroneous interpretation prejudiced State Auto, we reverse the district court's award of partial summary judgment to Boardwalk on the interpretation of the coinsurance provision.

16

**A.  We apply Kansas law and engage in de novo review of the district court's interpretation of the policy.**

The district court's interpretation of the coinsurance provision involves a conclusion of law that we review de novo. *See In re Universal Serv. Fund Tel. Billing Practice Litig.*, 619 F.3d 1188, 1211 (10th Cir. 2010) ("Contract interpretation is a question of law, which we . . . review de novo."). The parties agree that Kansas law governs our interpretation of the policy. *See Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013) (applying the state law that both parties agreed was applicable). Under Kansas law, we must ascertain what the parties intended. *Liggatt v. Emp'r's Mut. Cas. Co.*, 46 P.3d 1120, 1125 (Kan. 2002). When we can determine this intent from the written insurance contract, we go no further. *Id.*

**B.  Under *Boardwalk I*, the coinsurance provision's definition of "value" incorporates the terms of the optional coverage for replacement cost, which in turn includes law-and-ordinance costs.**

The coinsurance provision states that the amount owed to Boardwalk is reduced if the value of the apartment complex exceeds the policy limit of $7.4 million. Appellant's App'x at 84. But the policy does not define the term "value" or otherwise indicate whether the "value" of the complex includes law-and-ordinance costs. Thus, we must decide whether the term "value" in the coinsurance provision includes law and ordinance costs. We conclude that it does.

17

The parties agree that the term "value" refers to the replacement cost, rather than the actual cash value, of the apartment complex.[5] But the parties disagree about whether the replacement cost of the apartment complex includes law-and-ordinance costs. Boardwalk contends that the replacement cost of the apartment complex should not include law-and-ordinance costs, and State Auto disagrees. Boardwalk's interpretation would make it less likely that Boardwalk was underinsured, thereby avoiding the coinsurance provision and a reduction in the amount owed under the policy.

The district court agreed with Boardwalk, concluding that the "value" of the complex under the coinsurance provision means the replacement cost of the apartment complex without law-and-ordinance costs. We respectfully disagree, for Boardwalk's interpretation is foreclosed by the policy's text as construed in light of the Eighth Circuit's opinion in *Boardwalk I*. 572 F.3d 511 (8th Cir. 2009).[6]

There the Eighth Circuit made two critical holdings:

---

[5]   The parties agree that "value" means replacement cost because Boardwalk purchased additional replacement cost coverage. *See* Appellant's App'x at 64 (declaration page of the policy showing that Boardwalk had replacement cost coverage).

[6]   The parties agree that *Boardwalk I* controls. We too agree, concluding that *Boardwalk I* binds us under the doctrine of issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

18

1.      The term "value" in the coinsurance provision incorporates the policy's replacement-cost coverage, which is furnished by Section G.3 of the policy.

2.      Exclusion of law-and-ordinance costs from the policy's replacement-cost coverage is void because the exclusion violates Kansas public policy.

*Boardwalk I*, 572 F.3d at 517-18. In our view, these two holdings jointly require us to define "value" under the coinsurance provision as the replacement cost with law-and-ordinance costs.

**1.      *Boardwalk I* held that the term "value" in the coinsurance provision incorporates the policy's replacement-cost coverage; thus, "replacement cost" means the same thing for both loss calculation and the coinsurance provision.**

Replacement cost matters under the Boardwalk policy in two separate contexts: (1) for calculating covered losses sustained by Boardwalk, and (2) for calculating the value of the apartment complex for purposes of the coinsurance provision. The district court thought that the term "replacement cost" could mean different things in each context. On this basis, the district court construed "replacement cost" to include law-and-ordinance costs for loss calculation, but excluded these costs under the coinsurance provision. *Boardwalk I*, however, held that the coinsurance provision incorporates the same replacement-cost provision that the policy uses for loss calculation. *Boardwalk I*, 572 F.3d at 517. Thus, the district court's construction cannot be reconciled with *Boardwalk I*.

19

The policy's text states that Section G.3, the policy's replacement-cost provision, applies to the calculation of Boardwalk's covered losses. The policy states that loss is calculated based on "actual cash value" when the insured does not purchase optional replacement-cost coverage.[7] But Boardwalk did purchase replacement-cost coverage. In light of this purchase, the covered loss must be determined by replacement cost rather than actual cash value.[8]

By contrast, the policy's text does not expressly apply the replacement-cost provision to the valuation of the apartment complex under the coinsurance provision; the replacement-cost provision states only that replacement cost "replaces Actual Cash Value" in the policy's loss-calculation provision. In addition, the coinsurance provision is located in a different part of the policy and uses the term "value" rather than "actual cash value." Therefore, the policy's text does not clarify whether the term "value" in the coinsurance provision means "replacement cost" (as provided by Section G.3) or some other measure of "value."

---

[7]    Section E.7 of the policy, titled "Valuation," provides that State Auto "will determine the value of Covered Property in the event of loss or damage . . . [a]t actual cash value as of the time of loss or damage." Appellant's App'x at 84.

[8]    Section G.3 of the policy, the replacement-cost provision, provides that "Replacement Cost . . . replaces Actual Cash Value in [Section E.7, the loss-calculation provision]" when the insured purchases optional replacement-cost coverage. Appellant's App'x at 86.

In *Boardwalk I*, the Eighth Circuit Court of Appeals resolved this ambiguity by holding that under Kansas law, the coinsurance provision incorporates the policy's replacement-cost coverage. Thus, "value" under the coinsurance provision means "replacement cost" for purposes of loss calculation.

In reaching this conclusion, the Eighth Circuit followed a Kansas Court of Appeals case, *Wenrich v. Employers Mutual Insurance Cos.*, that addressed a virtually identical coinsurance provision. *Boardwalk I*, 572 F.3d 511, 517 (8th Cir. 2009) (citing *Wenrich*, 132 P.3d 970, 975 (Kan. Ct. App. 2006)). Like Boardwalk, the insured in *Wenrich* had purchased replacement-cost coverage. *Wenrich*, 132 P.3d at 973-74. And, like the Boardwalk coinsurance provision, the coinsurance provision in *Wenrich* used the term "value" rather than "actual cash value," leaving it unclear whether the coinsurance provision turned on replacement cost or actual cash value. *Id.*

In those circumstances, the *Wenrich* court held that "the replacement cost optional coverage must be construed as altering the methodology for determining 'the value of Covered Property in the event of loss' and is therefore incorporated into the coinsurance provisions." *Id.* at 975.

In *Boardwalk I*, the Eighth Circuit adhered to *Wenrich* and incorporated the Boardwalk policy's replacement-cost coverage into the coinsurance provision. "The *Wenrich* court [had] held that there [was] no

21

ambiguity in the contract," the Eighth Circuit explained, "because the replacement cost coverage is 'inherently incorporated' into the coinsurance provision." *Boardwalk I*, 572 F.3d at 517 (quoting *Wenrich*, 132 P.3d at 975). As a result, the Eighth Circuit concluded that "the term 'value' in the coinsurance provision means replacement cost." *Id.* at 516-17.

Like *Wenrich*, *Boardwalk I* incorporated the Boardwalk policy's replacement-cost coverage into the coinsurance provision in place of the term "value." Section G.3 of the policy defines the term "replacement cost" and sets out the policy's replacement-cost coverage. In light of *Boardwalk I*, the term "value" in the coinsurance provision means "replacement cost" as delineated by Section G.3.

Consequently, we must apply the same meaning of "replacement cost" in calculating Boardwalk's covered losses and in determining whether Boardwalk was underinsured for purposes of the coinsurance provision.

**2.    Under *Boardwalk I*, replacement cost must include law-and-ordinance costs.**

Given our holding that the term "value" in the coinsurance provision means the policy's replacement-cost coverage as provided by Section G.3 of the policy, we must decide whether that coverage includes law-and-ordinance costs. But *Boardwalk I* resolves this question, rejecting any

22

construction of the policy that excludes law-and-ordinance costs from replacement cost as void against Kansas public policy.

As written, Section G.3 purports to exclude law-and-ordinance costs from replacement cost.[9] But in *Boardwalk I*, the Eighth Circuit Court of Appeals held that withholding coverage for law-and-ordinance costs would violate Kansas public policy. *Boardwalk I*, 572 F.3d at 517-18. Because the parties could not lawfully exclude law-and-ordinance costs from coverage, the Eighth Circuit concluded that replacement cost for purposes of loss calculation had to include those costs. *Id.*

Under *Boardwalk I*, the term "value" in the coinsurance provision bears the same meaning as "actual cash value" in the loss-calculation provision: "replacement cost" as provided by Section G.3 of the policy. Because *Boardwalk I* requires replacement cost for purposes of loss calculation to include law-and-ordinance costs, replacement cost under the coinsurance provision must also include those costs. The district court's conclusion to the contrary was incorrect.

---

[9] Section G.3 of the policy provides that "replacement cost" "does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property." Appellant's App'x at 87.

**3. We reject the district court's reasons for excluding law-and-ordinance costs from the replacement cost of the apartment complex.**

The district court gave three reasons for its interpretation of the coinsurance provision, and Boardwalk defends these reasons on appeal:

1. The term "replacement cost" can mean different things in different parts of the policy.

2. Because the written policy provides additional coverage for law-and-ordinance costs, inclusion of these costs in the coinsurance provision would render the policy ambiguous, requiring construction in favor of Boardwalk as the insured.

3. The parties' intent would be frustrated by including law-and-ordinance costs within replacement cost under the coinsurance provision.

We respectfully disagree with each of these three reasons.

**a. In light of *Boardwalk I* and the structure of the policy, the term "replacement cost" cannot mean different things in different parts of the policy.**

First, the district court assumed that the term "replacement cost" can mean different things in different parts of the policy. Based on this assumption, the district court interpreted "replacement cost" differently in two separate contexts: (1) for the apartment complex under the coinsurance provision and (2) for Building 1 alone to determine the amount of the loss. The district court concluded that

- for application of the coinsurance provision, the apartment complex's "replacement cost" excludes law-and-ordinance costs and

24

- for calculation of covered losses, "replacement cost" includes law-and-ordinance costs.

We disagree, for the policy does not support different interpretations of the term "replacement cost" in different contexts. As we have explained, *Boardwalk I* held that the term "value" in the coinsurance provision means "replacement cost" as defined by Section G.3, the policy's replacement-cost provision. And *Boardwalk I* held that "replacement cost" (as defined by Section G.3) must include law-and-ordinance costs. As a result, the term "value" in the coinsurance provision must also include law-and-ordinance costs.

### b. Use of the term "replacement cost" to include law-and-ordinance costs does not render the optional coverage superfluous.

Second, the district court observed that Section A.4 of the policy allows the insured to buy additional coverage for law-and-ordinance costs, which the written policy otherwise purports to withhold. "If replacement cost now includes law and ordinance costs" in light of *Boardwalk I*, the district court determined, "then the additional coverage provision is superfluous." Appellant's App'x at 1716. As a result, the district court concluded that the policy was ambiguous, requiring construction in favor of the insured under Kansas law.

But the policy is not ambiguous, for *Boardwalk I* bars any interpretation of the replacement-cost provision that excludes law-and-

25

ordinance costs. Under Kansas law, "[a]mbiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning." *Simon v. Nat'l Farmers Org.*, 829 P2d 884, 888 (Kan. 1992). *Boardwalk I* leaves no uncertainty; it requires the court to interpret the apartment complex's "replacement cost" to include law-and-ordinance costs. Even if this interpretation renders Section A.4's optional law-and-ordinance coverage redundant, this redundancy would not justify adopting a different interpretation that is foreclosed by *Boardwalk I*.

   c.   **Because the terms of the policy (as reformed by *Boardwalk I*) are unambiguous, the parties' intent does not dictate exclusion of law-and-ordinance costs.**

Finally, the district court reasoned that the parties had not intended to include law-and-ordinance costs when valuing the apartment complex. For two reasons, however, we disagree.

First, the written policy, when construed in light of *Boardwalk I*, does not create an ambiguity. When the parties' intent is clear from the policy, we need not go further. *Osterhaus v. Toth*, 249 P.3d 888, 896 (Kan. 2011). As we have explained, *Boardwalk I* construed

- "replacement cost," for purposes of loss calculation, to include law-and-ordinance costs and

- the coinsurance provision to incorporate the same replacement-cost coverage used for loss calculation.

26

*Boardwalk I*, 572 F.3d at 517-18. Under these holdings, replacement cost under the coinsurance provision must include law-and-ordinance costs. Even if the parties originally intended to exclude law-and-ordinance costs from replacement cost in one or both of these contexts, *Boardwalk I* already reformed the policy in a way that deviated from the parties' impermissible intent. *See Nat'l Bank of Andover v. Kan. Bankers Sur. Co.*, 225 P.3d 707, 715 (Kan. 2010) ("[C]ompetent parties may make contracts on their own terms, provided such contracts are neither illegal nor contrary to public policy.").

Second, even if the policy itself were not conclusive, we conclude that the district court misinterpreted the intent reflected in the policy language. Based on the policy's structure and the purpose of coinsurance, the most likely intent underlying the policy's valuation scheme was to use the same measure of value in the contexts of both loss calculation and coinsurance, for the only meaningful way to determine whether Boardwalk was underinsured is to compare the policy limit to the amount that Boardwalk would recover in the event of a covered loss.

But the district court's interpretation introduces two separate measures of value for loss calculation and coinsurance. An example illustrates the problem with this apples-and-oranges approach. Suppose that each of the eight buildings had a replacement cost of $750,000 and

law-and-ordinance costs of $200,000. If all of the buildings were destroyed, the covered losses would total $7,600,000, exceeding the policy limit. Boardwalk would be underinsured. But under the district court's reading of the policy, the coinsurance provision would not be triggered because the value of the apartment complex would exclude the $1,600,000 in law-and-ordinance costs—even though these costs would be fully reimbursable for a loss that was only partial. In this hypothetical situation, Boardwalk would be underinsured, but it would not be subject to the coinsurance provision. We doubt that the parties would have intended this outcome, but it is the unavoidable result of using different measures of value for a damaged building and the entire apartment complex.[10]

**C.    The district court's error in interpreting the coinsurance provision constitutes a second ground for reversal.**

The district court erred in its summary judgment order by holding that the "value" of the apartment complex under the coinsurance provision means replacement cost without law-and-ordinance costs. Based on this error, the district court instructed the jury to determine the replacement

---

[10]    We recognize that parties may sometimes expressly choose different measures to value the covered loss and to determine whether the covered property is underinsured under the coinsurance provision. *See Carley Capital Grp. v. Fireman's Fund Ins. Co.*, 877 F.2d 78, 82 (D.C. Cir. 1989) ("Like other components of the policy contract, liability and coinsurance stipulations are whatever the parties choose to make them."). But here the parties did not expressly use different measures to calculate covered losses and to determine whether Boardwalk was underinsured. Before *Boardwalk I*'s reformation of the policy to conform to Kansas public policy, the same measure was used in both contexts: "value."

28

cost of the complex without law-and-ordinance costs. Instead, the court should have instructed the jury to include law-and-ordinance costs in the apartment complex's replacement cost. Had the jury included these costs, it might have found that the complex's replacement cost exceeded the policy limit of $7.4 million, triggering the coinsurance provision and reducing the amount owed by State Auto.

As a result, the district court's error prejudiced State Auto at trial. Because the error was prejudicial, we reverse the summary judgment ruling on interpretation of the coinsurance provision. With this reversal, we remand for a new trial with instructions to include law-and-ordinance costs when determining the apartment complex's replacement cost.

## IV. We vacate the district court's imposition of attorneys' fees and expenses against State Auto.

Because the jury found for Boardwalk, the district court granted Boardwalk's motion for attorneys' fees and expenses. In light of our reversal, we vacate the district court's imposition of attorneys' fees and expenses against State Auto.

## V. We reject State Auto's allegations of error in the district court's disposition of counterclaims and affirmative defenses, and we need not address State Auto's remaining arguments.

State Auto also challenges the rulings on its affirmative defenses and counterclaims. We reject this challenge. Because State Auto's other

arguments on appeal may not arise in the retrial, we decline to consider these arguments.

### A. We uphold the district court's dismissal of State Auto's defenses and counterclaims because State Auto has made no persuasive argument for reversal.

State Auto raised multiple affirmative defenses and counterclaims for fraud and misrepresentation, alleging that Boardwalk had provided misleading information about the claim. The district court dismissed the counterclaims under Federal Rule of Civil Procedure 12(b)(6) and struck the defenses under Rule 12(f). State Auto argues that in doing so, the district court erroneously applied a common law fraud standard to these claims and defenses. According to State Auto, the correct standard required only that it plead falsehood and materiality.

In our view, State Auto has failed to develop a sufficient argument for reversal. For the sake of argument, we can assume without deciding that Kansas law does require State Auto to plead only falsehood and materiality for the misrepresentation defenses and counterclaims. Even so, the district court concluded that State Auto had failed to adequately allege materiality. In its opening brief, State Auto does not give any reason to disturb the district court's ruling on materiality.[11]

---

[11] The district court's analysis of materiality turned in part on the Boardwalk tax returns referenced in State Auto's pleading. State Auto vaguely asserts that the district court's reliance on those returns was "improper" without any further explanation. Appellant's Opening Br. at 52.

We "will not consider issues that are raised on appeal but not adequately addressed." *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003). Because State Auto has failed to sufficiently contest the district court's dismissal of its affirmative defenses and counterclaims, we decline to disturb this part of the district court's ruling.

**B.    We need not address State Auto's remaining arguments on appeal because they may not arise in the retrial.**

State Auto also challenges seven other rulings:

1.    the exclusion of the Statement of Values document signed by a Boardwalk principal,

2.    the exclusion of testimony by Mr. Brent Vincent, State Auto's underwriter,

3.    the exclusion of a valuation report prepared by Boardwalk's expert in the Missouri litigation,

4.    the introduction of evidence regarding violation of the Kansas Unfair Claims Settlement Practices Act,

5.    the introduction of evidence about Boardwalk's consequential damages and the denial of State Auto's motion to separate the consequential damages issue from the other issues,

6.    the denial of a new trial based on the cumulative impact of evidentiary errors, and

7.    the denial of State Auto's motion for judgment as a matter of law on its affirmative defense involving Boardwalk's failure to cooperate.

---

As a result, this appeal point is not adequately developed for meaningful review. *See United States v. Mike*, 632 F.3d 686, 696 n.4 (10th Cir. 2011) (declining to address an argument because the proponent did "not develop [the] argument" or "cite any authority in support of it").

31

Because a new trial is necessary, these potential issues may not arise on remand or may arise in different ways. As a result, we decline to address State Auto's challenges to these seven rulings.

## VI.   Disposition

We reverse and vacate the judgment because the district court

- abused its discretion by excluding reference to the coinsurance provision and the effect of underinsurance and

- incorrectly construed the coinsurance provision to exclude law-and-ordinance costs from the value of the apartment complex.[12]

We affirm the dismissal of State Auto's affirmative defenses and counterclaims alleging fraud and misrepresentation.

The action is remanded to the district court for a new trial consistent with this opinion.[13] With this reversal and remand, we vacate the award of attorneys' fees and expenses against State Auto.

---

[12]   Though we reverse, we recognize that the district court had to confront a number of difficult issues and did so exceptionally well.

[13]   The district court's errors call the jury's valuation of the apartment complex into question, requiring vacatur of the judgment for Boardwalk on the award of unpaid insurance benefits. The jury also made findings on Boardwalk's lost business income and consequential damages, but it is less clear whether the district court's errors affect these findings.

We can remand for a new trial limited to specific issues, but only when "a new trial on less than all the issues could . . . be had without confusion and uncertainty." *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1178 (10th Cir. 1981). Otherwise, a new trial on fewer than all the issues "would amount to a denial of a fair trial." *Id.*

32

We decline to restrict the scope of the retrial, for neither party has addressed the possibility of a retrial limited to specific issues. Given the significance of the coinsurance provision, we cannot be certain about the potential effect of the district court's errors on the jury's other findings. Thus, we vacate the entire judgment and remand for a new trial without parceling out the claims for lost business income and consequential damages.