**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHIDDIX EXCAVATING, INC., a
Colorado corporation,

     Plaintiff - Appellee,

v.

COLORADO SPRINGS UTILITIES, a
subsidiary of City of Colorado Springs;
CITY OF COLORADO SPRINGS, a
municipal corporation,

     Defendants - Appellants.

No. 16-1394
(D.C. No. 1:14-CV-03355-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **MORITZ**, Circuit Judges.
_____

Colorado Springs Utilities, an enterprise of the City of Colorado Springs

(collectively, CSU), revoked the utility-installation license of Robert Curtis, an

employee of Chiddix Excavating, Inc. (Chiddix). Chiddix then brought this lawsuit

against CSU on the theory that CSU violated its procedural due-process rights when

it revoked Curtis' license. The case went to trial, and a jury awarded Chiddix $1.5

million. On appeal, CSU argues that Chiddix couldn't have a property interest in

Curtis' license because the CSU officials who made representations to that effect

_____

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. _See_ Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

were acting contrary to the provisions of the City of Colorado Springs Municipal Code and therefore outside of their authority. But because CSU failed to make this argument below and doesn't argue for plain error on appeal, we consider it waived. CSU also argues that the district court erred by admitting certain evidence at trial. But we find no abuse of discretion in the district court's evidentiary decision. We therefore affirm the district court's judgment.

## Background

CSU licensed Curtis to connect natural-gas service lines to CSU's natural-gas distribution system. During 2012 and 2013, Curtis supervised Chiddix's work installing gas service lines for approximately 100 homes in the Cuchares Ranch subdivision. The installation process involved digging trenches, installing gas service lines, and connecting those lines to CSU's main gas line. In August 2013, a CSU supervisor found two trenches in the subdivision that contained adjacent gas and electrical lines that were too close together, in violation of CSU's interpretation of its safety standards.

Chiddix disputes CSU's interpretation of the safety standards. Nevertheless, as a result of this alleged safety violation, CSU revoked Curtis' license.[1] CSU sent a letter to Chiddix and Curtis in September 2013 stating that neither Chiddix nor Curtis would be permitted to install gas lines to be connected to CSU's distribution system

---

[1] Initially, CSU stated that it "revoked" Curtis' license. App. vol. 2, 348. But it has also taken the position that it only "suspended" the license. *Id.* at 493. The distinction isn't relevant to the issues on appeal, so we refer to it as a revocation for simplicity.

2

for the next two years. CSU later confirmed to Chiddix's owner that no one working for or with Chiddix could install gas service lines to be connected to CSU's distribution system. Chiddix says that it asked CSU for a review of the license revocation but never received one. The parties had one meeting and some communication over the next two months but didn't reach a resolution. Eventually, in April 2015, CSU reinstated Curtis' license, and Chiddix began installing gas service lines again. But Chiddix was unable to install gas service lines to be connected to CSU's distribution system from August 2013 until April 2015.

Based on these events, Chiddix brought seven claims against CSU. The district court granted CSU summary judgment on all but one—Chiddix's procedural due-process claim. The case proceeded to trial, and the jury found that CSU violated Chiddix's procedural due-process rights by revoking Curtis' license without notice or an opportunity for a hearing. It further found that the lack of procedural due process caused Chiddix to lose profits. As a result, it awarded Chiddix $1.5 million. CSU appeals.

## Analysis

### I.     Procedural Due Process

To provide context for CSU's argument, we begin with a brief discussion of procedural due-process rights. The Fourteenth Amendment to the United States Constitution guarantees that a state won't deprive a party of "property[] without due process of law." U.S. Const. amend. XIV § 1. In practice, this simply means that a state can't decide to take away a party's property "unless fair procedures are used in

3

making that decision." *Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000) (quoting *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991)). But to prevail on a due-process claim, "a plaintiff must first establish that a defendant's actions deprived plaintiff of *a protect*[*a*]*ble property interest*." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (emphasis added).

What qualifies as a protected property interest extends "well beyond actual ownership" of land or money. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571–72 (1972). Indeed, the Supreme Court defines "property" in the due-process context very broadly, "as a 'legitimate claim of entitlement' to some benefit." *Hyde Park*, 226 F.3d at 1210 (quoting *Roth*, 408 U.S. at 577). For example, courts typically treat business and professional licenses as a type of property entitled to due-process protection. *See, e.g.*, *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (recognizing protected property interest in horse trainer's license); *Morris-Schindler, LLC v. City & Cty. of Denver*, 251 P.3d 1076, 1085 (Colo. App. 2010) ("A liquor license, like any business or professional license, is a property right which is entitled to due[-]process protection.").

Additionally, while the right to procedural due process stems from the Constitution, protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. For example,

4

a protected property interest may arise from "an explicit contractual provision," but it may also arise from "mutually explicit understandings" between parties. *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972).

With that background in mind, we turn to CSU's argument on appeal. CSU contends that the district court wrongly denied its motion for summary judgment on Chiddix's procedural due-process claim. Specifically, CSU argues the district court erred as a matter of law by concluding that a fact question remained for the jury about whether Chiddix had a property interest in Curtis' utility-installation license based on informal rules or a mutual understanding between the parties. CSU insists on appeal that any informal rule or mutual understanding about Chiddix's interest in the license couldn't be the source of a legally protected property interest. It contends that such a rule or understanding would contradict the City of Colorado Springs Municipal Code and would therefore be outside the authority of CSU representatives.

But before we can address the merits of CSU's contentions, we consider two procedural hurdles. First, do we have appellate jurisdiction over CSU's appeal of the district court's denial of its summary judgment motion regarding Chiddix' due-process claim? Second, did CSU properly preserve this argument?

## A.    Jurisdiction

Chiddix argues that we lack jurisdiction to hear this portion of the appeal because CSU didn't file a motion under Federal Rule of Civil Procedure 50(b) after the close of all the evidence. "We review questions of our appellate jurisdiction de novo." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1091 (10th Cir.

5

2017).

In most cases, the denial of summary judgment—which occurs because there's a genuine issue of material fact to be resolved at trial, *see* Fed. R. Civ. P. 56(a)—isn't a final judgment and can't be appealed. *Moore v. City of Wynnewood*, 57 F.3d 924, 928 (10th Cir. 1995); *see also* 28 U.S.C. § 1291 (authorizing appellate jurisdiction over final judgments). That's because "the denial of summary judgment is not the final word" on the legal sufficiency of the evidence. *Feld v. Feld*, 688 F.3d 779, 782 (D.C. Cir. 2012). So to preserve for appeal a challenge to the sufficiency of the evidence initially raised in a summary-judgment motion, a party must file a Rule 50(b) motion at or after the end of the trial asking the court for judgment as a matter of law. *See Ortiz v. Jordan*, 562 U.S. 180, 189 (2011) ("Absent such a motion, we have repeatedly held, an appellate court is 'powerless' to review the sufficiency of the evidence after trial." (quoting *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006))).

But "[a] critical distinction exists between 'summary[-]judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide.'" *Wilson v. Union Pac. R.R. Co.*, 56 F.3d 1226, 1229 (10th Cir. 1995) (quoting *Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 842 (10th Cir. 1994)); *see also Feld*, 688 F.3d at 782 (explaining that unlike question about sufficiency of evidence, resolution of question of law doesn't change after trial). And in this circuit, when "a motion for summary judgment based on an issue of law is denied, appellate review of the motion is proper even if the case proceeds to

trial and the moving party fails to make a subsequent Rule 50 motion." *Wilson*, 56 F.3d at 1299; *see also Feld*, 688 F.3d at 782 (noting that six circuits agree with this rule while only two disagree). *But cf. Ortiz*, 562 U.S. at 190 (declining to rule on this issue). So "when the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment." *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006); *see also Copar Pumice Co. v. Morris*, 639 F.3d 1025, 1031 (10th Cir. 2011) (concluding that *Ortiz* didn't undermine *Haberman*'s rule). Thus, our jurisdiction turns on whether the district court denied CSU summary judgment on purely legal grounds.

The answer to that question isn't immediately clear. We have declined to hold that the existence of a property interest is always a question of law. *See Driggins v. City of Okla. City*, 954 F.2d 1511, 1513 (10th Cir. 1992) ("We decline to adopt a broad rule that questions of a property right in employment are always issues of law for the judge."). Moreover, CSU's summary-judgment pleadings didn't expressly frame the issue as a matter of law; CSU simply argued that Chiddix had no property interest in the license. The district court's summary-judgment order, on the other hand, appeared to treat the property-interest issue as a question of fact: it found that Chiddix had "put forth sufficient evidence to create a dispute of fact as to whether, through 'informal rules and mutually explicit understandings,' [Chiddix] had a 'legitimate claim of entitlement' in [Curtis'] license." App. vol. 2, 550 (quoting *Ficarra v. Dep't of Regulatory Agencies, Div. of Ins.*, 849 P.2d 6, 20 (Colo. 1993) (en

7

banc)); *see also Perry*, 408 U.S. at 601–02 (holding that mutually explicit understanding could give rise to protected property interest).

But this conclusion—that a factual dispute existed about whether Chiddix had a property interest based on an informal rule or a mutually explicit understanding— necessarily required the district court to implicitly decide the purely legal question that CSU now challenges. In other words, to reach this conclusion, the district court first had to decide either (1) that the informal rule or mutual understanding didn't contradict the City Code or (2) that an informal rule or mutual understanding that contradicted the City Code could provide Chiddix with a property interest in Curtis' license, even though it didn't explicitly conduct this analysis. Because CSU now argues otherwise, it appeals from this implicit legal conclusion. As such, we have jurisdiction over CSU's appeal from the district court's order denying summary judgment even though CSU didn't file a Rule 50(b) motion.

### B. Preservation

Although we have jurisdiction, CSU faces yet another procedural hurdle: as explained more fully below, it forfeited the specific argument it makes on appeal by not raising it below and then waived it on appeal by failing to make a plain-error argument. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) (explaining that "failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court").

Below, CSU argued that because the City Code defines a licensed installer as a

8

natural person and Chiddix is a corporation, Chiddix had only a unilateral expectation of benefit from—and not a property interest in—Curtis' utility-installation license. CSU repeated this argument in its reply to Chiddix's opposition to summary judgment. Then, after Chiddix presented its evidence at trial, CSU argued for judgment as a matter of law based on the sufficiency of the evidence. Specifically, CSU's attorney opined to the court: "I don't think there's been any evidence of a[n] implicit agreement or understanding that could even support the assertion that . . . [Chiddix] has a property interest in [Curtis'] license." App. vol. 3, 679.

But on appeal, CSU takes a different tack. It argues that "mutual understandings [that] contravene express provisions of the City Code cannot give rise to a property interest." Aplt. Br. 15. According to CSU, any CSU officials or representatives who indicated that Chiddix had a property interest in the utility-installation license were acting ultra vires—that is, beyond their authority—because the City Code only allows natural persons (not businesses) to hold a utility-installation license. And CSU further contends that ultra vires statements cannot form the basis for a protected property interest.

CSU didn't make this argument below, despite having several opportunities to do so. First, the district court's summary-judgment order made clear that the basis for a property interest in this case, if there was one, came from informal rules or a mutual understanding between the parties. CSU argues that the district court raised the mutual-understanding theory on its own, without prompting from either party.

But Chiddix's response to CSU's motion for summary judgment argued that "[p]roperty interests are created and their dimensions are defined by existing rules *and understandings* that stem from an independent source *such as state*[-]*law*[]*rules or understandings* that secure certain benefits and that support claims of entitlement to those benefits." App. vol. 2, 476 (first emphasis added) (quoting *Hyde Park Co.*, 226 F.3d at 1210). Thus, we cannot conclude that the district court's decision was entirely unprompted.

Moreover, CSU didn't ask the district court to reconsider its summary-judgment ruling based on the ultra vires theory it presents on appeal. *See* Fed. R. Civ. P. 59(e); *Warren v. Am. Bankers Ins. of Fla.,* 507 F.3d 1239, 1243 (10th Cir. 2007) (noting court's "inherent power to reconsider its interlocutory rulings").[2] Nor did CSU object to the property-interest jury instruction that presented this mutual-understanding theory to the jury. And in its motion for judgment as a matter of law, CSU only challenged the sufficiency of the evidence for a mutual understanding and made no ultra vires argument.

In sum, CSU never argued below that a mutual understanding couldn't give rise to a property interest because the CSU officials acted outside their authority by

---

[2] We don't suggest that CSU was required to file a motion to reconsider to preserve its ultra vires argument. *See United States v. Madrid*, 633 F.3d 1222, 1228 (10th Cir. 2011) (Kelly, J., concurring) ("In the civil context, there is 'absolutely no authority that creates an obligation to raise a motion to reconsider in order to preserve [an] argument for appeal.'" (alteration in original) (quoting *Walker v. Abbott Labs.,* 340 F.3d 471, 475 (7th Cir. 2003))). We point out the absence of a motion to reconsider merely to refute CSU's argument that it lacked an opportunity to respond to the district court's rules-or-understanding theory.

making statements contrary to the City Code. Instead, CSU argued at summary judgment that the City Code couldn't create Chiddix's property interest because only natural persons could hold a utility-installation license. But that's distinct from its argument on appeal that *because* the City Code only allows a natural person to hold a license, CSU's representatives acted ultra vires by treating Chiddix as the license holder. So although CSU generally argued against Chiddix's property interest below, it never presented the theory that it advances on appeal. And "our general rule against considering new arguments on appeal applies equally when 'a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial.'" *United States v. Nelson*, 868 F.3d 885, 891 n.4 (10th Cir. 2017) (quoting *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 722 (10th Cir. 1993)).

Nevertheless, CSU argues that we have discretion to hear issues of law presented for the first time on appeal. But "no case in this circuit has held that we may reverse based on 'purely legal' arguments in the absence of plain error." *Richison*, 634 F.3d at 1129. And not only is plain error an "extraordinary, nearly insurmountable burden" in civil cases, *id.* at 1130 (quoting *Emp'rs Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 770 (10th Cir. 2004)), but CSU also hasn't argued for plain-error review on appeal—even in its reply brief. So we decline to consider the ultra vires theory that CSU advances for the first time on appeal. *See Richison*, 634 F.3d at 1130–31.

## II. Safety-Standards Evidence

CSU next argues that the district court erred in admitting evidence about

11

whether Curtis in fact violated CSU's safety standards because that evidence (1) wasn't relevant to the procedural due-process issues and (2) prejudiced and confused the jury. According to CSU, "a procedural due[-]process trial morphed into a trial about whether [Chiddix] violated the [s]tandards and whether CSU officials were justified in being concerned over the lack of separation between the gas and electric lines." Rep. Br. 21.

As long as the complaining party raised its objection below, we review the district court's evidentiary rulings for an abuse of discretion. *See Nat'l Envtl. Serv. Co. v. Ronan Eng'g Co.*, 256 F.3d 995, 1001 (10th Cir. 2001). Here, CSU objected to the introduction of the safety-standard evidence during Chiddix's opening statement. Specifically, CSU argued to the district court that evidence about the safety standards wasn't relevant to whether Chiddix possessed a property interest or was denied procedural due process and would be a distraction. The district court responded that whether CSU had followed its own rules was relevant to whether CSU had provided procedural due process. It also said that evidence of the underlying violations was "part of the background of the case," and it overruled CSU's objection. App. vol. 3, 573.

Chiddix contends that CSU's objection wasn't sufficient to preserve this issue for appeal and that CSU waived its early objection by introducing its own safety-standards evidence at trial. CSU replies that "there was no need for [it] to object every time the issue was subsequently raised in the trial." Rep. Br. 18. We don't need to resolve these arguments; instead, we assume that CSU initially preserved and

12

didn't subsequently waive its evidentiary challenge and reject that challenge on the merits.

CSU complains about testimony from three witnesses in particular—Lloyd Pacheco and Joe Sanchez, who were former CSU inspectors, and Patrick Kelley, who testified as an expert in natural-gas utilities—as well as certain testimony elicited from Shane Chiddix (the company's owner) and Curtis. It's undisputed that CSU revoked Curtis' license because he laid gas lines and electric lines in the same trench less than three feet from each other. What was disputed at trial, via the testimony CSU objects to, was whether CSU's safety standards actually required three feet of separation or if one foot of separation was sufficient.

Pacheco and Sanchez both testified that the applicable standards required a one-foot separation between utility lines. And Kelley testified that "it's well known across the United States of America that there is a 12-inch radial separation requirement between electric and natural gas or other utilities." App. vol. 3, 642. He said that the applicable CSU standards included this common one-foot-separation requirement. And he testified that the three-foot requirement was added to the 2014 standards as a result of this particular case.

Shane Chiddix likewise said that the 2013 standards required only one foot of separation. He also testified that the standards were changed in 2014 (after the revocation and because of this lawsuit) to require three feet of separation. And Curtis explained that the section of the 2013 standards that included a three-foot-separation rule didn't apply to the type of gas lines he installed at Cuchares Ranch. CSU, for its

13

part, presented testimony from Wayne Simshauser, the gas-operations supervisor at CSU who initially revoked Curtis' license, and he said that CSU required three feet of separation.

On appeal, CSU first contends that Chiddix's safety-standard evidence wasn't admissible because it wasn't relevant to the procedural due-process issues at trial. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). But Chiddix argues that the safety-standards evidence was relevant to proving the damages caused by CSU's failure to provide procedural due process before revoking Curtis' license. We agree with Chiddix.

Evidence is relevant if it tends "to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining the action." Fed. R. Evid. 401. The primary facts of consequence in a procedural due-process case are the existence of a property interest and a lack of appropriate process. *See Dill v. City of Edmond*, 155 F.3d 1193, 1206 (10th Cir. 1998), *abrogated in part on other grounds by Currier v. Doran,* 242 F.3d 905 (10th Cir. 2001). And CSU argues that whether Curtis did or didn't violate CSU's safety standards isn't relevant to either of those elements.

But even if we assume that CSU is correct, to recover more than nominal damages for a procedural due-process violation, a plaintiff must show something more than those two elements. *See id.* at 1209 (noting that if "the lack of due process itself did not cause any injury," then plaintiff can recover only nominal damages). That's because "no compensatory damages may be awarded where the procedures

14

were deficient, but the actual injuries were caused by a *justified* deprivation of a property interest." *Id.* (emphasis added). So here, to win more than nominal damages, Chiddix had to prove that CSU wasn't justified in depriving Chiddix of its property interest in Curtis' license—that if CSU had provided appropriate process, it wouldn't have revoked Curtis' license. *See id.* And that's where the safety-standards evidence comes in.

As Chiddix points out, the evidence about whether Curtis in fact complied with CSU's safety standards "tends to show that if CSU had afforded Chiddix a hearing prior to revoking the license, Chiddix could have marshaled a reasonable defense to CSU's expressed justification for the revocation." Aplee. Br. 46. Without evidence that Chiddix *didn't* violate the safety standards, the jury couldn't have found that CSU caused Chiddix anything more than nominal harm when it revoked the license without procedural due process. *See Dill*, 155 F.3d at 1209. Thus, the safety-standards evidence was relevant to prove a fact of consequence. *See* Fed. R. Evid. 401.

Next, CSU asserts that even if the evidence was relevant, the district court should have excluded it because it was unfairly prejudicial and confused the jury. Under Federal Rule of Evidence 403, a district court can exclude otherwise relevant evidence if its probative value "is substantially outweighed by the danger of unfair prejudice or jury confusion." *Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, 816 F.3d 1284, 1288 (10th Cir. 2016). But "we regard the power to exclude relevant evidence as extraordinary, to be exercised sparingly." *Id.* at 1289. As such,

15

when deciding whether to exercise that power, "the district court must give the evidence its maximum reasonable probative force and the minimum reasonable risk of unfair prejudice or confusion." *Id.*

Acknowledging these standards, CSU argues that the district court should have excluded the evidence because its relevance to the procedural due-process inquiry was "extremely unclear" and the risk of serious jury confusion and unfair prejudice was particularly high. Aplt. Br. 31. Specifically, CSU contends that admitting this evidence risked confusing the jury and unfairly prejudicing CSU by focusing too much on the safety standards and not enough on the due-process issue. But as already discussed, the evidence also tended to show that the revocation was wrongful, which was relevant to proving that CSU's failure to provide procedural due process caused Chiddix's damages. We cannot say that the district court abused its discretion in weighing the probative value against the risks and finding that the latter didn't substantially outweigh the former. Its decision was not "based on a clearly erroneous finding of fact or an erroneous conclusion of law," nor does it "manifest[] a clear error of judgment." *Boardwalk Apartments*, 816 F.3d at 1289 (quoting *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995)).

Finally, we decline to address CSU's cursory argument that the evidence about alleged safety violations was improper character evidence under Federal Rule of Evidence 404(b). CSU didn't make this particular objection below and doesn't argue for plain-error review on appeal, so it waived that argument. *See Richison*, 634 F.3d at 1130–31.

16

**Conclusion**

Because CSU failed to raise its ultra vires argument below and fails to make a plain-error argument on appeal, we treat the argument as waived and decline to consider it. And we find that the district court didn't abuse its discretion in admitting evidence related to the allegedly violated safety standards; the evidence was unquestionably relevant and its probative value wasn't substantially outweighed by the risk of unfair prejudice or jury confusion. We therefore affirm the district court's judgment.

Entered for the Court


Nancy L. Moritz
Circuit Judge

17